

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00056-CR
No. 02-23-00057-CR

———————————————

DOUGLAS LEE MCBATH, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court Nos. CR22-00224, CR23-00043

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Douglas Lee McBath appeals his convictions for burglary of a habitation with assault or attempted assault (Case No. CR22-00224) and attempted aggravated assault (Case No. CR23-00043). *See* Tex. Penal Code Ann. §§ 22.02(a)(1), 30.02(a)(3). In two issues, McBath contends that the evidence was legally insufficient to show that he entered the habitation in question without effective consent and that convictions for both assault-based burglary and attempted aggravated assault violated his double-jeopardy right against multiple punishments for the same conduct.[1] We affirm the trial court's judgments.

## II. BACKGROUND

At the time of the offenses, McBath's seventeen-year-old daughter Shalonda Johnson lived with her mother Mary Johnson and Shalonda's two half-siblings. Keon Holland is the father of one of Shalonda's half-siblings. Both McBath and Holland

---

[1]In his second issue, McBath asserts that his "[p]rosecution for both burglary with an assault (or an attempted assault) and for the assault itself violated [his] double jeopardy rights against multiple punishments for the same conduct." But "[a] multiple-punishments violation occurs after sentencing . . . ." *Ex parte Aubin*, 537 S.W.3d 39, 43–44 (Tex. Crim. App. 2017). Despite his second issue's mischaracterization, McBath argues that a defendant cannot be convicted of both a greater-included and lesser-included offense when the evidence shows that the defendant committed only one act. *See Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998). Thus, we will address McBath's double-jeopardy issue as arising from his convictions for the two offenses, not the prosecution thereof.

were permitted in Mary's house, but Holland was Mary's "live-in boyfriend" at the time. McBath visited Shalonda, but there is evidence that he was not permitted in Mary's house when Holland was there.

On May 18, 2022, Mary, Shalonda, and Holland were at Mary's house when McBath arrived to see Shalonda. McBath entered the house and then went back outside with Shalonda, where she told him that Holland had threatened to beat up Mary and her. Shalonda and McBath reentered the house and found Holland in a bedroom. McBath confronted Holland with Shalonda's allegations, and the men fought.

After the fight, McBath left, Holland went to purportedly get a gun from his brother, and Mary called 911. Police responded, and upon his return to Mary's house, Holland told the responding officers that McBath had entered Mary's house, attacked him, and put him in a choke hold. McBath was arrested the next day and charged with burglary of a habitation with assault or attempted assault and attempted aggravated assault.

A jury convicted McBath on both counts and assessed a ninety-nine-year sentence on each count. The trial court sentenced him accordingly, and this appeal followed.

### III. DISCUSSION

In his first issue, McBath contends that the evidence supporting the burglary conviction is legally insufficient to show that he entered Mary's house without consent. He asserts that he had "express permission" to enter the house. In his second issue,

McBath contends that the convictions for assault-based burglary and attempted aggravated assault violated his double-jeopardy right against multiple punishments for the same crime. McBath reasons that since assault is a lesser-included offense of both aggravated assault and burglary, the State could not convict him for both offenses. We will address each issue in order.

## A. Issue 1: Sufficiency of the Evidence

### 1. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*,

4

569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

5

## 2. Analysis

McBath was indicted for committing burglary by "intentionally or knowingly enter[ing] a habitation or a portion thereof, without the effective consent of Keon Holland, the owner or a person with the greater right to possession and use thereof, and attempt[ing] to commit or commit[ing] an assault against Keon Holland."[2] *See* Tex. Penal Code Ann. § 30.02(a)(3). McBath argues that the evidence is insufficient to show that he did not have effective consent to enter the habitation in question—Mary's house. He specifically asserts that the evidence did not show that Holland was the homeowner and, in fact, showed that he entered with the owner's "express permission." He does not challenge the proof of the offense's remaining elements. *See id.*

"'Consent' means assent in fact, whether express or apparent." *Id.* § 1.07(a)(11). "'Effective consent' includes consent by a person legally authorized to act for the owner." *Id.* § 1.07(a)(19). An owner is a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of

---

[2]The indictment lists Section 30.02(a)(1) as the statute under which McBath was indicted, but the substance of the indictment and the jury charge describe an offense under Section 30.02(a)(3). *See* Tex. Penal Code Ann. § 30.02(a)(1) (entering a habitation or building without consent and with intent to commit a felony, theft, or assault), (a)(3) (entering a habitation or building without consent and committing or attempting to commit a felony, theft, or assault). No one noticed this variance, and the record does not reflect that the State attempted to prove that McBath committed an offense under Section 30.02(a)(1). Thus, the variance is immaterial. *See Teal v. State*, 230 S.W.3d 172, 181 (Tex. Crim. App. 2007) (holding that an indictment need only "enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective").

the property than the actor." *Id.* § 1.07(a)(35)(A). "'Possession' means actual care, custody, control, or management." *Id.* § 1.07(a)(39). "[A] person's 'right to possession' must be measured at the time of the accused's alleged criminal act." *Morgan v. State*, 501 S.W.3d 84, 92 (Tex. Crim. App. 2016). Any person with a greater right to actual care, custody, control, or management of the property than the defendant may be alleged as the owner. *Alexander v. State*, 753 S.W.2d 390, 392 (Tex. Crim. App. 1988); *Morrow v. State*, 486 S.W.3d 139, 164 (Tex. App.—Texarkana 2016, pet. ref'd). Proof of ownership may be made by direct or circumstantial evidence. *Villani v. State*, 116 S.W.3d 297, 306 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); *Liggens v. State*, 50 S.W.3d 657, 660 (Tex. App.—Fort Worth 2001, pet. ref'd).

According to McBath, the evidence showed that at the time of the offense, only Mary and Shalonda lived in Mary's house and that Holland was "simply a visitor who would 'come over to the house sometimes' with Mary Johnson's permission." McBath admits that he too was simply a visitor "who was present with the permission of his daughter [Shalonda]." Thus, McBath asserts that both he and Holland were guests with an equal right to possession.

Although there is evidence that both McBath and Holland were visitors to Mary's house, there is also evidence that Holland stayed there overnight with Mary's permission. Specifically, a police investigator who interviewed Mary about the incident testified that Mary referred to Holland as her "live-in boyfriend." Moreover, the uncontested evidence reflects that Holland was a guest in Mary's house when McBath

7

entered. Holland told the responding officers that he was "sitting in [his] room" when McBath entered the house and threatened him "inside [his] household." This evidence is sufficient to support a conclusion that Holland had a greater right to possession than McBath. *See, e.g., Davis v. State*, 586 S.W.3d 586, 589–90 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (holding that the complainant who was staying in another person's apartment had possession of the apartment and that appellant who had moved out and taken most of his possessions did not despite evidence that the apartment lessee allowed them both to "come and go as they pleased"); *Ramirez v. State*, 429 S.W.3d 686, 689 (Tex. App.—San Antonio 2014, pet. ref'd) (holding that evidence reflecting that the girlfriend of the homeowner's son was entitled to use kitchen appliances and to deny entry to persons who had no right to enter was sufficient to support the jury finding that she had a greater right to possession than her estranged husband who entered and threatened her); *Brown v. State*, No. 14-11-00236-CR, 2012 WL 1345765, at *2 (Tex. App.—Houston [14th Dist.] Apr. 17, 2012, pet. ref'd) (mem. op., not designated for publication) (holding that live-in boyfriend of apartment lessee had possession of the apartment and a greater right to possession than the stranger who entered by force).

McBath argues that it was "plain that Holland did not live at the residence" based on the following exchange between the State and Mary at trial:

> Q.    (BY [THE STATE]) So you lived at 901 Fletcher. Who stayed with you at that house then?

8

A. Me and my -- well, me and my three kids.

Q. All right. And then I know Keon [Holland] didn't live there, but did he come over to the house sometimes, too?

A. Yes.

Although this testimony appears to contradict the cited prior statements, the jury alone was responsible for resolving this conflict and weighing the evidence. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Mary's remaining testimony reflects her reticence to admit any prior statements that she had made to police or to the grand jury, and the jury was able to assess Mary's credibility and demeanor when weighing her testimony. *See Merritt v. State*, 368 S.W.3d 516, 527 (Tex. Crim. App. 2012).

McBath argues that even if Holland had a greater right to possession, he had an owner's consent because Shalonda let him in Mary's house. The evidence reflects that Shalonda lived in Mary's house at the time of the offense and that she may have let McBath into the house when he arrived. The evidence further reflects that she accompanied him back into the house immediately before the assault. But the indictment did not allege that Shalonda was "the owner or a person with the greater right to possession and use," and the State is not required to prove that a defendant lacked consent of every person with a superior right to possession. *Davis v. State*, 782 S.W.2d 211, 221 (Tex. Crim. App. 1989); *see also Jones v. State*, No. 14-04-00410-CR, 2005 WL 3116289, at *2 (Tex. App.—Houston [14th Dist.] Nov. 23, 2005, no pet.) (mem. op., not designated for publication) (same). Additionally, Shalonda was

9

seventeen at the time of the offense, and McBath cites no authority supporting his contention that a minor can provide effective consent under the burglary statute when a parent owner is present.

And there is evidence that neither Mary nor Holland consented to McBath's entry on the day in question. A police investigator testified that Mary asserted during her telephone interview that she did not consent to McBath's entering her house, that he could not "willfully come in the house without being announced or being let in," and that "she could not remember the last time [McBath] was actually allowed inside the house because [he] and her current live-in boyfriend [Holland] . . . had been having issues and stuff." Additionally, video from a responding officer's body-camera reflects Holland implying that he did not consent, asserting that McBath had "no reason to walk in anybody['s] house" and threaten him "inside [his] household." At trial, Mary contradicted and claimed not to recall her assertions. Holland likewise contradicted his recorded statements and refuted or did not recall similar statements he allegedly made to the grand jury because he was "under the influence." The jury was responsible for weighing this testimony. *See Merritt*, 368 S.W.3d at 527.

The verdict reflects that the jury inferred from the evidence that Holland had a greater right to possession to Mary's house than McBath and that McBath did not have consent to enter. "This was not a determination so outrageous that no rational trier of fact could agree." *Id.* (quoting *Wirth v. State*, 361 S.W.3d 694, 698 (Tex. Crim. App. 2012)); *see also Clark v. State*, 637 S.W.3d 246, 252 (Tex. App.—Amarillo 2021, pet.

10

ref'd).[3] Viewing all the evidence in the light most favorable to the verdict, the jury could have rationally found beyond a reasonable doubt that McBath did not have consent to enter Mary's house at the time of the offense. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Accordingly, we overrule McBath's first issue.

---

[3]Relying on the premise that consent to entry includes consent to commit the requisite included crime, the State asserted at trial that no reasonable person could find that Shalonda had permission to allow McBath to enter Mary's house. Specifically, in response to Holland's testimony that Shalonda had consented to McBath's entry, the State asked, "So Shalonda had permission . . . to let Douglas McBath come in that house and assault you in the back room, that's what you're telling us?" Reiterating the question in closing argument, the State postulated, "So effective consent. You guys tell me, would you allow your 17-year-old daughter to let somebody in the house so that that person could beat up your husband? That's the craziest idea of effective consent I've ever heard." The State further asserted that "nobody gives their 17-year-old daughter consent to let somebody in to beat up somebody else that's in the house. That doesn't happen. So even if she let him in, she didn't have effective consent, but I don't believe she let him in." The State continues its tack on appeal, asserting that we should reject the premise that "Shalonda had a right to allow her father into the home to assault a member of the household."

The State's premise, however, is wrong because effective consent consists only of consent to enter. *See Rogers v. State*, 550 S.W.3d 190, 196 (Tex. Crim. App. 2018) (holding that the State improperly "conflat[ed] consent to enter with consent to commit a crime"), *withdrawn and superseded by* 677 S.W.3d 705 (Tex. Crim. App. 2023) (withdrawing opinion and abating appeal due to appellant's death); *Moore v. State*, 999 S.W.2d 385, 404 (Tex. Crim. App. 1999) ("Even if there were evidence that [the property owner's daughter] told appellant he could enter the house and take property, her participation in the burglary would render any 'consent' ineffective."); *Eppinger v. State*, 800 S.W.2d 652, 653 (Tex. App.—Austin 1990, pet. ref'd) (rejecting the State's argument that the evidence proved lack of consent because appellant had consent to enter "for a lawful purpose only, while the evidence demonstrate[d] that appellant entered for the purpose of committing theft").

**B. Issue 2: Double Jeopardy**

In his second issue, McBath contends that his prosecution for burglary and for attempted aggravated assault violated his double-jeopardy rights. McBath's convictions for burglary and for attempted aggravated assault, however, do not raise a double-jeopardy concern.

**1. Applicable Law and Standard of Review**

The Fifth Amendment of the United States Constitution provides that no person shall have life or limb twice put in jeopardy for the same offense. U.S. Const. amend. V. Generally, this provision—the Double Jeopardy Clause—protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021).

To determine whether a defendant has been assessed multiple punishments for the same offense, we start with the "same elements" test set forth in *Blockburger*. *Bien v. State*, 550 S.W.3d 180, 184 (Tex. Crim. App. 2018) (referring to *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932)). Under that test, two offenses are not the same if "each provision requires proof of a fact [that] the other does not." *Id.* (quoting *Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182).

But in Texas, the analysis does not end there. Using the cognate-pleadings approach, we also look to the pleadings to flesh out the *Blockburger* test. *Id.* (citing *Bigon*

12

*v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008)). Under the cognate-pleadings approach, even if the offenses have differing elements under *Blockburger*, they may still be the same for double-jeopardy purposes if the indictment alleges the same "facts required." *Bigon*, 252 S.W.3d at 370.

After applying the cognate-pleadings approach, if the two offenses have the same elements, then a judicial presumption arises that the offenses are the same for double-jeopardy purposes, and the defendant may not be convicted of both. *Bien*, 550 S.W.3d at 184. But that presumption can be rebutted if the legislature clearly expressed an intent to create two separate offenses. *Id.* Conversely, if the two offenses, as pleaded, have different elements, the judicial presumption is that the offenses are different for double-jeopardy purposes, and multiple punishments may be imposed. *Id.* at 184–85. This presumption too can be rebutted by a showing, through various factors, that the legislature clearly intended only one punishment. *Id.* at 185.

A defendant may forfeit a potential double-jeopardy violation by not asserting it in the trial court. *Langs v. State*, 183 S.W.3d 680, 686–87 (Tex. Crim. App. 2006). But he may raise a double-jeopardy claim for the first time on appeal "when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of [the] usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

## 2. Analysis

McBath admits that he did not raise a double-jeopardy objection at trial. Thus, the issue is forfeited unless the undisputed facts show that the double-jeopardy claim is clearly apparent on the face of the record. *See id.* A double-jeopardy claim is clearly apparent on the face of the trial record if resolving the claim does not require further proceedings to introduce additional evidence supporting the double-jeopardy claim. *Ex parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013); *Gonzalez*, 8 S.W.3d at 643. Although the State may have an interest in maintaining a conviction's finality, there is no legitimate interest in maintaining a conviction when the face of the record clearly shows that the conviction was obtained in contravention of constitutional double-jeopardy protections. *Denton*, 399 S.W.3d at 545.

"[W]hen separate theories for an offense are issued to the jury disjunctively, a double jeopardy violation is not clearly apparent on the face of the record if one of the theories charged would not constitute a double jeopardy violation and there is sufficient evidence to support that valid theory." *Langs*, 183 S.W.3d at 687 (citing *Gonzalez*, 8 S.W.3d at 641–42). "The fact that the jury's verdict *could* have relied on a theory that would violate the Double Jeopardy Clause[] is not sufficient to show a constitutional violation 'clearly apparent on the face of the record.'" *Id.* (quoting *Gonzalez*, 8 S.W.3d at 643, and holding that double-jeopardy violation was not clearly apparent on the face of the record when jury charge had two disjunctive burglary theories: entry with intent to commit retaliation and entry and commission or attempted commission of

14

retaliation); *Gonzalez*, 8 S.W.3d at 645 (holding that double-jeopardy violation was not clearly apparent on the face of the record for aggravated-robbery and injury-to-elderly convictions because all of the alternative means for committing aggravated robbery did not implicate double jeopardy and jury's verdict could have rested on any one of the alternative means).

Citing *Rangel v. State*, 179 S.W.3d 64, 71 (Tex. App.—San Antonio 2005, pet. ref'd), McBath argues that the State "must have necessarily proved the attempted aggravated assault (or the lesser-included assault) in order to prove the burglary"; thus, "it was precluded from also prosecuting [him] separately for that assault." But *Rangel* is inapplicable because both indictments at issue there alleged the same assaultive offense: aggravated assault. *Id.* at 70 (noting that the burglary indictment alleged that Rangel "intentionally or knowingly enter[ed] a habitation without the effective consent of . . . the owner thereof . . . and attempted to commit or committed the felony offense of aggravated assault" and that the aggravated-assault indictment alleged that he "did then and there intentionally, knowingly, or recklessly cause bodily injury to Antonio Medrano by stabbing the said Antonio Medrano with a knife; and [Rangel] did then and there use or exhibit a deadly weapon, to wit: a knife, during the commission of said assault").

Here, the indictments alleged different assaultive offenses. The attempted-aggravated-assault indictment alleged that McBath "intentionally, knowingly, and recklessly caused bodily injury to [Holland] by imped[ing] [his] normal breathing or

15

circulation of blood . . . by applying pressure to [his] throat or neck . . . , and thereby attempted to cause [Holland] serious bodily injury . . . ." Thus, both the lesser-included assault offense and the attempted-aggravated-assault offense were limited to McBath's alleged choking of Holland. *See* Tex. Penal Code Ann. § 22.02(a)(1) ("A person commits an [aggravated assault] if the person commits an assault as defined in § 22.01 and the person . . . causes serious bodily injury to another . . . ."); Tex. Code Crim. Proc. Ann. art. 37.09(2) ("An offense is a lesser included offense if . . . it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person . . . suffices to establish its commission . . . ."). The jury charge likewise limited the lesser-included assault offense, requiring the jury to find that McBath "imped[ed] [Holland's] normal breathing or circulation of blood . . . by applying pressure to [his] throat or neck" for a conviction.

The burglary indictment, on the other hand, broadly alleged that McBath "attempted to commit or committed an assault against Keon Holland." *See* Tex. Penal Code Ann. § 30.02(a)(3) ("A person commits [a burglary] if, without the effective consent of the owner, the person . . . enters a building or habitation and commits or attempts to commit . . . an assault."). The burglary jury charge instructed the jury on the broad statutory elements of assault, which include causing bodily injury, threatening imminent bodily injury, or causing an "offensive or provocative" physical contact. *See id.* § 22.01(a). The charge further instructed the jury that it needed only to find that McBath "attempted to commit or did commit assault" to meet burglary's assaultive

16

element.  Neither the burglary indictment nor the burglary jury charge limited the assault offense like the attempted-aggravated-assault indictment and jury charge did.

This difference meant that the jury could have found McBath guilty of attempted aggravated assault and burglary on different grounds.  To find McBath guilty of attempted aggravated assault, the jury had to find that he caused bodily injury to Holland by choking him.  Although this same finding would satisfy the assaultive element in the burglary charge, the jury was not so limited and could have found the assault in the burglary charge by some other means, which would not raise double-jeopardy concerns.  *See Sonnenberg v. State*, No. 03-14-00530-CR, 2016 WL 3475200, at *2 (Tex. App.—Austin June 16, 2016, no pet.) (mem. op., not designated for publication) (holding that distinct theories alleged for aggravated-assault and assault-strangulation offenses permitted conviction on both offenses without evoking double-jeopardy concerns).  The record reflects sufficient evidence to support such a finding.

McBath told the police investigator that he entered Mary's house with Shalonda and confronted Holland with her allegations.  He asserted that Holland got in "his face," he then pushed Holland back, and he and Holland started wrestling.  McBath then grabbed Holland "around the waist" and "threw him on the bed."  Shalonda likewise testified that McBath pushed Holland, albeit after Holland first pushed McBath, and then the two men wrestled.  Mary confirmed that a fight ensued after McBath confronted Holland.  Holland told the responding officers that McBath assaulted him by, among other things, hitting him in his face and head.  While being interviewed by

the responding officers, Holland also displayed scratches that he allegedly received when he and McBath were "tussling." Photographs of these scratches were entered into evidence. Although Holland later denied much of what he told the responding officers, he admitted at trial that he and McBath wrestled. Holland also told the responding officers that McBath threatened him, saying, "I['ve] been wanting to kill you." Mary testified that while McBath and Holland were fighting, Shalonda "might have" told McBath, "I don't want you to kill him."

On this evidence, the jury could reasonably have found the burglary charge's assaultive element without finding that McBath choked Holland. *See* Tex. Penal Code Ann. § 22.01(a)(2) (assault by "threaten[ing] another with imminent bodily injury"), (a)(3) (assault by "offensive or provocative" physical contact). Thus, the undisputed facts do not clearly show a double-jeopardy claim on the face of the record. *See Denton*, 399 S.W.3d at 544. Accordingly, we overrule McBath's second issue.

## IV. CONCLUSION

Having overruled McBath's two issues, we affirm the trial court's judgments.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 29, 2024

18