**EX PARTE Keith Michael St. AUBIN, Applicant**

**NOS. WR-49,980-12 through -16**

Court of Criminal Appeals of Texas.

Delivered: September 20, 2017

Brittany Carroll Lacayo, Lacayo Law Firm, Pllc, 212 Stratford St., Houston, Texas 77006, for Applicant.

Allison Lindblade, Assistant Criminal District Attorney, Galveston County, 600 59th St., Ste. 1001, Galveston, Texas 77551, Stacey Soule, State's Attorney, Austin, TX, for the State.

Keller, P.J., delivered the opinion of the court as to part II.C. in which Keasler, Hervey, Yeary, and Keel, JJ., joined and otherwise announced the judgment of the court and filed an opinion in which Hervey, Yeary, and Keel, JJ., joined.

Applicant claims that the Double Jeopardy Clause was violated when the State obtained multiple convictions against him in a single trial. He raises this claim for the first time in this subsequent habeas application under Article 11.07.[1] We hold that this *multiple-punishments* double-jeopardy claim does not satisfy the innocence-gateway exception. Furthermore, because the double-jeopardy principles used to resolve the "new" case upon which applicant relies were not new, he has not satisfied the new-legal-basis exception. Because an exception to the prohibition against subsequent applications has not been satisfied, we dismiss these applications.

# I. BACKGROUND

Applicant shot five people at the 1998 Mardi Gras celebration in Galveston. He was charged with one count of murder and four counts of attempted capital murder. Nava was the victim alleged in the murder count and he was the second victim alleged in each of the attempted capital murder counts. At a single trial, applicant was found guilty of all five charges and sentenced to life imprisonment in each case, with the sentences to run concurrently.[2]

In 2001, applicant filed a number of habeas applications in which he alleged ineffective assistance of counsel and jury instruction error in these cases. While these applications were on remand to the trial court, applicant filed more habeas applications. We denied relief on these later applications in November 2001, and on the initial applications in May 2002. The current habeas applications were filed in the trial court on July 15, 2015.

# II. ANALYSIS

## A. Subsequent-Application Bar Generally

After the final disposition of an initial application that challenges a conviction, we may not consider the merits of a subsequent habeas application for that conviction unless the applicant satisfies an exception to the statutory prohibition against subsequent applications.[3] The current ap-

---

1. TEX. CODE CRIM. PROC. art. 11.07.

2. Applicant was also convicted of assault on a public servant and sentenced to ten years' imprisonment, but that conviction is not at issue in this case.

3. TEX. CODE CRIM. PROC. art. 11.07, § 4 ("If a subsequent application for a writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court *may not consider the merits of* or grant relief based on the subsequent appli-

cation unless" one of the exceptions is met.) (emphasis added). We do not consider the question that divided judges on this Court in *Ex parte Marascio*, 471 S.W.3d 832 (Tex. Crim. App. 2015), whether double-jeopardy claims that could have been raised on direct appeal are cognizable on habeas corpus. *Compare id.* at 833-40 (Keasler, J., concurring) (contending that such claims are not cognizable) *with id.* at 855-59 (Alcala, J., dissenting) (contending that such claims are cognizable). Even a holding that a claim is not

plications were filed after the final disposition of initial applications that challenged the convictions at issue.[4] The question, then, is whether there is an exception to the subsequent-application bar.

## B. Innocence-Gateway Exception

One such exception is the "innocence gateway" exception, which requires a showing by a preponderance of the evidence that "but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt."[5] This language

requires, at the very least, that the alleged constitutional violation occur at or before a finding of guilt.[6] A claim based on the "successive prosecutions" strand of double-jeopardy jurisprudence satisfies such a requirement. This is so because a successive-prosecutions violation involves two separate criminal proceedings.[7] If the offenses in the two proceedings are the same for double jeopardy purposes, then the second proceeding should never have occurred—the issue of the applicant's guilt would never have been submitted to a jury.[8] In *Ex parte Milner*, the double jeopardy

cognizable because it could have been raised on appeal is considered to be a disposition on the merits for purposes of the § 4 bar. *See Ex parte Torres*, 943 S.W.2d 469, 474 (Tex. Crim. App. 1997) ("A disposition is related to the merits if it decides the merits or makes a determination that the merits of the applicant's claims can never be decided.") (citing *Hawkins v. Evans*, 64 F.3d 543, 547 (10th Cir. 1995), for the proposition that a "disposition is considered 'on the merits' if the court refuses to determine the merits because of state procedural default"). Because cognizability is a merits question for the purpose of § 4, we must consider the § 4 bar before considering a cognizability question. The concurrence contends that we miss the opportunity to define a unifying principle of cognizability for habeas claims, but the legislature has explicitly prohibited us from considering the merits of a claim if § 4 is not met. We would disregard that explicit legislative command if we were to consider the cognizability of applicant's claim.

4. *See Ex parte Evans*, 964 S.W.2d 643, 646 (Tex. Crim. App. 1998) (a challenge to the conviction, for the purpose of § 4, involves claims regarding "the final consummation of the prosecution," "the judgment or sentence that the accused is guilty as charged," or "a judgment of guilty and the assessment of punishment."); *Torres*, 943 S.W.2d at 472-74 (a denial on the merits of all claims raised is a final disposition of a habeas application for the purpose of § 4).

5. Tex. Code Crim. Proc. art. 11.07, § 4(a)(2).

6. *See Ex parte Blue*, 230 S.W.3d 151, 161 (Tex. Crim. App. 2007) ("Upon satisfactory

proof at trial that a capital murder defendant is mentally retarded or was a juvenile, no rational juror would answer any of the special issues in the State's favor, if only for the simple reason that the statutory special issues would not be submitted to the jurors in the first place.") (construing innocence of the death penalty exception for capital cases). Whether the statutory language requires more than that—e.g. a showing of factual as opposed to legal innocence—is an issue we need not address in this opinion. *See Selsor v. Kaiser*, 22 F.3d 1029, 1035 (10th Cir. 1994) (holding that a showing of factual innocence, as opposed to legal innocence, required to invoke federal innocence-gateway exception).

7. *See Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) ("The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.") (internal quotation marks omitted).

8. *Id.*; *Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) ("Obviously, these aspects of the guarantee's protections would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit. Consequently, if a criminal defendant is to avoid *exposure* to

claim was clearly a successive-prosecutions claim.[9] It is not clear whether *Ex parte Knipp* involved a successive-prosecutions claim or a multiple-punishments claim.[10] Even if it involved a multiple-punishments claim, though, Knipp's claim differed from typical multiple-punishments claims where, for instance, two offenses have overlapping elements that render them "the same" for double jeopardy purposes. In *Knipp*, the State simply made a mistake in charging Knipp twice for one drug delivery.[11] The offense upon which we granted relief under Art. 11.07 § 4(a)(2) never occurred at all. At the very least, it would be incorrect to say that *Knipp* held that a multiple-punishments claim necessarily meets the innocence-gateway exception.

 The reasoning that applies to a successive-prosecutions double-jeopardy claim does not apply to a multiple-punishments double-jeopardy claim. When the

convictions occur at a single criminal trial, the role of the double-jeopardy guarantee "is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."[12] The Supreme Court has explicitly recognized that the State has the right to prosecute and *obtain jury verdicts* on two offenses in a single trial, even if the offenses are the same for double jeopardy purposes.[13] Because the protection against double jeopardy does not prohibit multiple jury verdicts of guilt within a single trial, it cannot be said that "but for a violation of the protection against double jeopardy, no rational juror would have found the applicant guilty of both offenses." A rational juror might well be able to find a defendant guilty of both offenses, and doing so would not violate the Constitution. It is only upon entry of a judgment for multiple offenses, after sentencing, that a multiple-punishments violation even occurs. A mul-

double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs.") (emphasis in original).

9. *See Ex parte Milner*, 394 S.W.3d 502, 505 (Tex. Crim. App. 2013) ("Applicant plead guilty to the attempted capital murders in Cause Nos. 2404 and 2405 ... was assessed consecutive life sentences in each cause. The three pleas were entered in separate proceedings conducted consecutively on the same day."); *id.* at 504 ("Applicant has proven that he is actually innocent of the second conviction for attempted capital murder.").

10. *See Ex parte Knipp*, 236 S.W.3d 214, 214-15, 217 (Tex. Crim. App. 2007) (offenses were in separate indictments with separate cause numbers).

11. *Id.* at 216 ("The State apparently mistook the gross weight in the DEA lab report as being the weight of methamphetamine delivered in some other delivery than that reported by Det. Womack, which was indicted as Count 2 in Cause No. 03-12-08654-CR, and

again indicted Applicant in this cause.... Applicant has accompanied the meritorious double-jeopardy claim in his subsequent writ with a prima facie showing of actual innocence of delivering between 4 and 200 grams of methamphetamine on or about September 12, 2003, as alleged in the indictment in this case.").

12. *Brown*, 432 U.S. at 165, 97 S.Ct. 2221.

13. *Ball v. United States*, 470 U.S. 856, 865, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985) (After finding two offenses to be the same for double-jeopardy purposes: "We emphasize that while the Government may seek a multiple-count indictment against a felon for violations of §§ 922(h) and 1202(a) involving the same weapon where a single act establishes the receipt and possession, the accused may not suffer two convictions or sentences on that indictment. If, upon the trial, the district judge is satisfied that *there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count*, however, the district judge should enter judgment on only one of the statutory offenses.") (emphasis added).

tiple-punishments violation occurs after sentencing, so a necessary precondition for the innocence-gateway exception—that a constitutional violation occur at or before a finding of guilt—is typically not met.[14] The only possible exception would be the unusual type of claim at issue in *Knipp* where a duplicate offense is mistakenly charged. Applicant's multiple-punishments claim does not fall within the unusual fact situation at issue in *Knipp*, so his claim fails to meet the "at or before a finding of guilt" precondition for invoking the innocence-gateway exception.

## C. "New Legal Basis" Exception

Another exception to the bar against subsequent applications is the "new legal basis" exception, which requires a showing that "the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the ... legal basis for the claim was unavailable on the date the applicant filed the previous application."[15] Applicant relies upon *Ex parte Milner* for the proposition that he has suffered a double jeopardy violation. It is true that *Milner* was decided after applicant filed his prior applications and it involved the same types of charges as those at issue in this case: a murder and multiple attempted murders that all alleged the killing of the same victim.[16] But Milner

14. The dissent claims that we reject the State's "waiver of procedural default" but cites no authority for the proposition that procedural default can be waived (much less that the requirements of § 4 can be waived) and we have, in fact, held to the contrary. In *Saldano v. State*, 70 S.W.3d 873, 891 (Tex. Crim. App. 2002), we rejected the State's confession of error in the Supreme Court because it was "contrary to our procedural law for presenting a claim on appeal." And in *Darcy v. State*, 488 S.W.3d 325, 327-28 (Tex. Crim. App. 2016), we held that error preservation is a systemic requirement, which would indicate that it is not subject to waiver. Moreover, § 4 prohibits any court from even considering the merits of a claim in a subsequent application absent an enumerated exception, *see supra* at n.3, and waiver by the State is not enumerated as an exception in § 4. *See* Tex. Code Crim. Proc. art. 11.07, § 4.

The dissent further claims that the double-jeopardy violation in applicant's case occurred when he was convicted rather than when he was punished. The dissent is incorrect, because applicant's claim is of the "multiple punishments" variety, *see supra* at part II.B. *Evans*, cited by the dissent, does not address the timing of when a double-jeopardy violation occurs. *See Evans v. State*, 299 S.W.3d 138, 141 (Tex. Crim. App. 2009) ("In this context the State may seek a multiple-count indictment based on violations of different statutes, even when such violations are established by a single act; but the defen-

dant may be convicted and sentenced for only one offense. A double jeopardy violation occurs even when, as in the case before us, the sentences are concurrent and the impermissible conviction does not result in a greater sentence.") (citation omitted). More to the point, the innocence-gateway exception in § 4 requires that no rational juror could have found the applicant guilty beyond a reasonable doubt, *see supra* at n.5 and accompanying text, and the Supreme Court in *Ball* recognized that the State could legitimately obtain a jury determination of guilt for offenses that are the same for double jeopardy purposes and that a constitutional violation occurred only if the judge entered judgment on both offenses. *See supra* at n.13.

15. Tex. Code Crim. Proc. art. 11.07, § 4(a)(1).

16. *See Milner*, 394 S.W.3d at 504. *Milner* differs from the present case in that the attempted-capital-murder counts alleged attempted *serial* murders under Tex. Penal Code § 19.03(a)(7)(B) (murders pursuant to the same scheme or course of conduct) while applicant's attempted-capital-murder counts alleged attempted *mass* murders under Tex. Penal Code § 19.03(a)(7)(A) (murders committed in the same transaction). This difference between the two cases does not affect our analysis. *See Milner*, 394 S.W.3d at 508 (court failed to see a differentiation between the two types of multiple-murder capital murders for double-jeopardy purposes).

received relief under the innocence-gateway exception. In *Milner*, we expressly declined to address whether the new-legal-basis exception was satisfied.[17]

 We conclude that it was not. Neither *Milner* nor *Saenz*,[18] on which *Milner* partially relied,[19] satisfy the new-legal-basis exception. To show that he is entitled to consideration of a subsequent application on the basis of new law, an applicant must show that "the legal basis was not recognized by *and could not have been reasonably formulated from* a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before" the date of the previous application.[20] Although this Court had not previously addressed a double-jeopardy claim involving the type of charges before us until the decision in *Milner*, the principles of double-jeopardy law that were used to resolve *Milner* (and *Saenz*) were not new, but were familiar principles articulated in earlier cases from the Supreme Court and this Court. *Milner*, in fact, cited and relied upon well-established caselaw from the Supreme Court and this Court that articulated how to analyze multiple-punishment double jeopardy claims (*Ball v. United States* and *Ex parte Ervin*) and unit-of-prosecution · issues (*Sanabria v. United States* and *Ex parte Hawkins*).[21] *Saenz* likewise relied upon the familiar analyses

set forth in *Sanabria*, *Hawkins*, and *Ervin*.[22] The double-jeopardy claim applicant makes could have been, and in *Milner* and *Saenz* was, reasonably formulated from double-jeopardy decisions from the Supreme Court and this Court that existed before applicant filed his earlier applications.[23]

### D. Disposition

In summary, applicant's multiple-punishments double-jeopardy claims meet neither the innocence-gateway nor the new-legal-basis exception to the subsequent-application bar. Finding no other potentially applicable exception, we hold that the subsequent-application bar applies and that we may not consider the merits of applicant's claims. We dismiss the current applications under TEX. CODE CRIM. PROC. art. 11.07, § 4.

Keasler, J., filed a concurring opinion.

Newell, J., filed a dissenting opinion in which Alcala, Richardson, and Walker, JJ., joined.

Keasler, J., filed a concurring opinion.

Because I cannot join much of the Court's reasoning, I join only Part II.C. of its opinion and concur in the judgment. Based on my views of a double-jeopardy claim's non-cognizability, the Court's resolution of Michael St. Aubin's double-jeop-

---

17. 394 S.W.3d at 505.

18. *Saenz v. State*, 166 S.W.3d 270 (Tex. Crim. App. 2005).

19. *See Milner*, 394 S.W.3d at 506 n.12, 507-08 & n.18 & nn.21-27, 509 n.31 (discussing or citing *Saenz*).

20. TEX. CODE CRIM. PROC. art. 11.07, § 4(b) (emphasis added). *See also Ex parte Hood*, 211 S.W.3d 767, 775 (Tex. Crim. App. 2007), *different result reached on reconsideration by*, 304 S.W.3d 397 (Tex. Crim. App. 2010).

21. *See Milner*, 394 S.W.3d at 507 nn.15-17 (citing *Ball v. United States*, 470 U.S. 856, 861, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *Ex parte Hawkins*, 6 S.W.3d 554 (Tex. Crim. App. 1999); *Ex parte Ervin*, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999)).

22. *Saenz*, 166 S.W.3d at 272 (citing *Sanabria*, *Hawkins*, and *Ervin*).

23. *See supra* at the two immediately preceding footnotes.

ardy claims under Code of Criminal Procedure Article 11.07, § 4 is largely academic. It is not clear to me how a non-cognizable claim could ever satisfy § 4(a)(2)'s "innocence gateway."[1] Resolving St. Aubin's claims under § 4 based on the type of double-jeopardy claim he asserts poses larger implications concerning this Court's interpretation of Article 11.07 as it relates to initial and subsequent applications.

## I.

In *Ex parte Marascio*, I asserted that, because double-jeopardy claims in most instances are record claims available on appeal, they should not be cognizable in an application for habeas corpus.[2] I reassert the argument here.

We have long recognized the principle that habeas corpus proceedings may not be used for claims that should have been raised on appeal.[3] If a claim was available on appeal but was not asserted in the court of appeals, an applicant has generally forfeited his claim and the claim may not be heard in a collateral attack.[4] But this rule must permit two exceptions: (1) claims that by their nature require subsequent record development; and (2) claims asserting a violation of an absolute requirement or prohibition—critical components to the proper functioning of our adjudicatory process—that we categorized as immune from procedural default in *Marin v. State*,[5] our watershed decision on procedural default and error preservation.[6]

*Ex parte Moss* is a recent example of the latter.[7] Moss challenged the trial court's jurisdiction to revoke her community supervision. After revocation, Moss absconded and her direct appeal was dismissed.[8] Moss asserted her jurisdictional complaint for the first time in a habeas corpus application. Noting that jurisdiction is a systemic requirement that operates independent of litigants' wishes, this Court held that the merits of Moss's claim could be entertained irrespective of the Court's embrace of procedural default in the habeas corpus context.[9]

Double-jeopardy rights fall outside of *Marin*'s most vaunted category because they may be waived, and therefore they cannot be absolute rights or prohibitions

1. Tex. Code Crim. Proc. art. 11.07, § 4(a)(2) (West 2015) (permitting the Court to consider claims in a subsequent application only if "but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.").

2. *Ex parte Marascio*, 471 S.W.3d 832, 834 (Tex. Crim. App. 2015) (Keasler, J., concurring).

3. *See generally Ex parte Wilcox*, 128 Tex.Crim. 146, 79 S.W.2d 321, 321 (1935); *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex.Crim.App. 1996) (quoting *Ex parte Groves*, 571 S.W.2d 888, 890 (Tex. Crim. App. 1978), "It is well-settled 'that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.' ").

4. *Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004).

5. *See Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997).

6. *Ex parte Marascio*, 471 S.W.3d at 835–36 (Keasler, J., concurring).

7. *Ex parte Moss*, 446 S.W.3d 786, 788–89 (Tex. Crim. App. 2014).

8. *Id.* at 788.

9. *Id.* at 789; *see Sledge v. State*, 391 S.W.3d 104, 108 (Tex. Crim. App. 2013) ("[W]e have recognized them to be cognizable without regard to ordinary notions of procedural default—essentially because it is simply not optional with the parties to agree to confer subject matter jurisdiction on a convicting court where that jurisdiction is lacking.").

by definition—they are more appropriately labeled waiver-only rights.[10] We have previously held that a defendant may affirmatively waive his right to the Fifth Amendment's double-jeopardy protections.[11] While a guilty plea alone does not waive a defendant's double-jeopardy rights, the record of a proceeding may indicate that a defendant effectuated a waiver by agreeing to subject himself to double jeopardy if it benefits him.[12] In *Ex parte Birdwell*, we held "that the applicant agreed to subject himself to a second trial for the same offense, and to receive a lesser sentence which he had already earned enough credit to have discharged."[13] Because double-jeopardy rights may be waived, they cannot be placed in *Marin*'s first category.

Further, finding that double jeopardy is an absolute right or prohibition would stifle the ability of the State and a defendant to engage in free negotiations and arrive at mutually beneficial resolutions of criminal cases. If a defendant chooses to subject himself to a potential double-jeopardy violation because, in his judgment, it results in a beneficial outcome of a pending case instead of standing on his double-jeopardy rights, he should be free to do so.[14] In a negotiated plea bargain, a defendant already expressly gives up a whole host of rights, including the right to a jury trial, the right to require the State to prove guilt beyond a reasonable doubt, the right to confront and cross-examine witnesses, and the right to be sentenced by a judge considering the entire range of punishment in certain circumstances.[15] It makes little sense to elevate double-jeopardy rights to a station so sacrosanct that the defendant himself—for whom those rights exist—may not intentionally forego them.

In a single trial, St. Aubin was tried and convicted for the murder of Oscar Nava; the attempted capital murder of Christina Gonzales, Michael Lopez, Juan Garcia, and Luis Martinez; and an assault on a public servant. The underlying aggravating factor for each of the attempted capital murders was Oscar Nava's murder. The jury assessed life sentences for the murder and attempted capital murder convictions, and ten years for the assault on a public servant conviction. St. Aubin challenged his convictions on appeal and in initial habeas corpus applications, but he never complained that the convictions violated double jeopardy. He raises his double-jeopardy

---

10. *See Ex parte Marascio*, 471 S.W.3d at 838–40 (Keasler, J., concurring); *Marin*, 851 S.W.2d at 278–79 (holding waiver-only rights may not be forfeited by inaction, but are waivable if the waiver is affirmatively, plainly, freely, and intelligently made).

11. *Ex parte Birdwell*, 7 S.W.3d 160, 164 (Tex. Crim. App. 1999) (holding that applicant waived his double-jeopardy right to be free from a second prosecution because the record of this proceeding shows that the applicant agreed to subject himself to a second trial for the same offense); *Ex parte McJunkins*, 954 S.W.2d 39, 41 (Tex. Crim. App. 1997).

12. *Ex parte Birdwell*, 7 S.W.3d at 163–64 (citing *Menna v. New York*, 423 U.S. 61, 63 n.2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) and *United States v. Broce*, 488 U.S. 563, 575, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)).

13. *Id.* at 164; *see Jeffers v. United States*, 432 U.S. 137, 153, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (holding that Jeffer's affirmative request for separate trials "deprived him of any right that he might have had against consecutive trials.").

14. *See Ex parte Birdwell*, 7 S.W.3d at 160 (holding that applicant waived his double-jeopardy right to be free from a second prosecution because the record of the proceeding shows that the applicant agreed to subject himself to a second trial for the same offense).

15. *Grado v. State*, 445 S.W.3d 736, 740 (Tex. Crim. App. 2014); *see Mendez v. State*, 138 S.W.3d 334, 344 (Tex. Crim. App. 2004).

claims for the first time in these subsequent applications.

St. Aubin's failure to assert his available double-jeopardy claims on appeal renders those claims forfeited regardless of whether they are alleged in an initial or subsequent habeas corpus application.[16] St. Aubin's multiple-punishment double jeopardy claims neither require factual development nor assert *Marin* category-one violations of an absolute requirement or prohibition. Accordingly, the Court should declare St. Aubin's double-jeopardy claims non-cognizable regardless of the particular double-jeopardy strand they assert and regardless of whether they appear in an initial or subsequent application.[17] Because St. Aubin asserts non-cognizable federal constitutional violations in his subsequent applications, I would dismiss the claims without an analysis of whether such claims meet § 4(a)(2).

## II.

The Court misses an opportunity to define a unifying principle for the cognizability of habeas corpus claims. Instead, the Court resolves St. Aubin's applications by parsing the particular strand of double-jeopardy jurisprudence his claims advance and whether that particular strand satisfies the temporal requirement the Court summarily declares § 4(a)(2) requires.[18] Despite the Court's legally correct differentiation of multiple-punishments and successive-prosecution double-jeopardy rights, it gets the Court no closer to developing a cohesive theory of cognizability.

The Court's reasoning suggests that a non-cognizable federal constitutional claim could, in theory, overcome the § 4(a)(2) "actual innocence" subsequent application bar. Yet, the same non-cognizable federal constitutional claim asserted in an initial application would not entitle the same applicant to a true merits review.[19] In *Ex parte Torres*, we stated that § 4 demonstrated a legislative intent to limit an applicant to "one bite of the apple" subject only to limited exceptions.[20] It then makes little sense to suppose, as this Court does today, that perhaps the right claim, cognizable or not, could satisfy the § 4(a)(2) exception. St. Aubin's applications are more intuitively decided on cognizability. Why proceed with a § 4 analysis that, even if satisfied, requires this Court to reject the claim because it is not cognizable?

Newell, J., filed a dissenting opinion in which alcala, richardson and walker, JJ., joined.

Applicant was convicted of one count of murder, and four counts of attempted capital murder. In these post-conviction applications, Applicant contends that he has received multiple punishments for the same conduct in violation of the Double Jeopardy Clause. The State and the trial court agree. The State asks that we vacate and set aside Applicant's attempted capital murder convictions and leave the murder conviction, and its attendant life sentence, in place. That is also what the trial court recommends.

16. *See Ex parte Marascio*, 471 S.W.3d at 840 (Keasler, J., concurring).

17. *Id.*

18. *Ante*, op. at 46–47

19. *See, e.g., Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004) (denying a challenge to the legality of a search and seizure because Applicant forfeited his claim by failing to raise it on direct appeal); *Ex parte Kirby*, 492 S.W.2d 579, 580–81 (Tex. Crim. App. 1973).

20. *Ex parte Torres*, 943 S.W.2d 469, 474 (Tex. Crim. App. 1997).

But we are not granting Applicant relief. Instead, we reject the State's waiver of procedural default.[1] Then, we treat Applicant's double-jeopardy claim as punishment error even though the constitutional error occurred when Applicant was convicted rather than when he was punished. *Evans v. State*, 299 S.W.3d 138, 141 (Tex. Crim. App. 2009) ("A double jeopardy violation occurs even when, as in the case before us, the sentences are concurrent and the impermissible conviction does not result in a greater sentence."). We should just do what the State and the trial court ask us to do; reform the judgment to reflect a single conviction for murder with a life sentence. *Bigon v. State*, 252 S.W.3d 360, 372 (Tex. Crim. App. 2008) ("When a defendant is subjected to multiple punishments for the same conduct, the remedy is to affirm the conviction for the most serious offense and vacate the other convictions."). Because we do not, I dissent.

---

1. In its brief, the State agreed that denying relief in this case would serve no legitimate state interests. In *Ex parte Knipp*, we construed a similar concession by the State as a waiver of procedural default. 236 S.W.3d 214, 216 n. 3 (Tex. Crim. App. 2007) ("[T]he State has indicated its willingness to forego its substantial interest in the finality of applicant's plea, and it would serve no legitimate state interests to enforce usual rules of procedural default.").