

# NUMBER 13-23-00196-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JONATHAN PAUL JONES,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

## ON APPEAL FROM THE 144TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

---

# OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva**
**Opinion by Justice Benavides**

On January 31, 2020, at around 1:00 a.m., appellant Jonathan Paul Jones entered an exit ramp driving the wrong direction. As he reached the top of the ramp, Jones was involved in a head-on collision with Taylor McCowan as she exited Loop 1604 in San Antonio, Texas. McCowan later died from her injuries, and Jones was charged with

intoxication manslaughter (Count I) and manslaughter (Count II), both second-degree felonies. *See* TEX. PENAL CODE ANN. §§ 19.04, 49.08. The State's primary theory of causation at trial involved Jones's alleged consumption of alcohol prior to the accident: either he was legally intoxicated under Count I, or he was under the influence and his decision to drive in that condition was reckless under Count II. The jury acquitted Jones of intoxication manslaughter but found him guilty of manslaughter. The jury also found that Jones used his vehicle as a deadly weapon and sentenced him to a term of imprisonment for eleven years and six months.

Jones raises four issues on appeal: (1) his conviction on Count II after being acquitted on Count I constituted a double-jeopardy violation; (2) the evidence was insufficient to support his conviction under Count II because the jury implicitly rejected the State's intoxication evidence under Count I and the remaining evidence did not show recklessness; (3) the trial court erred by excluding certain evidence as hearsay when it was admissible under the optional completeness rule; and (4) the trial court erred by excluding expert testimony about the route Jones may have taken before turning the wrong way onto the exit ramp.[1] We affirm.

## I.    BACKGROUND

Count I of the indictment alleged that Jones caused McCowan's death by operating a motor vehicle in a public place while intoxicated. Count II of the indictment alleged that

---

[1] This appeal was transferred to us from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). We are bound by the precedent of the transferring court to the extent that it conflicts with our own. *See* TEX. R. APP. P. 41.3.

Jones recklessly caused McCowan's death "by driving and operating a motor vehicle in the opposite direction of traffic on a highway/roadway; and/or driving and operating a motor vehicle while under the influence of alcohol." Finally, the indictment included an allegation that Jones used his vehicle as a deadly weapon.

As Jones acknowledges in his brief, "there was clearly sufficient evidence that [Jones] caused the accident that killed [McCowan]." Instead, the primary dispute at trial was what caused Jones to drive the wrong way up the exit ramp. Jones admitted to an investigating officer at the scene that he had "two beers" earlier in the evening. The officer testified that he observed several clues that indicated that Jones was intoxicated, including the odor of alcohol on Jones's breath, "unsteadiness," "a noticeable sway," and slow responses to the officer's questions. According to the same officer, Jones failed each of the three standard field sobriety tests by exhibiting six out of six clues on the horizontal gaze nystagmus test, five out of eight clues on the walk-and-turn test, and four clues on the one-leg-stand test. The officer concluded that Jones was intoxicated and arrested him. The State also introduced evidence that an involuntary blood draw taken at approximately 3:00 a.m. showed that Jones's blood alcohol concentration (BAC) at the time of the draw was 0.177.

The State also suggested that Jones's intoxication could be inferred from other facts. The State introduced evidence that the exit ramp contained a "DO NOT ENTER" sign visible to someone driving up the ramp and that other traffic control devices should have alerted Jones to the fact that he could not turn that direction onto the exit ramp. For example, Jones's theory at trial was that he traveled up Barshop Blvd. to the frontage

3

road, crossed the frontage road, and turned left onto the exit ramp.[2] The State pointed out that, to travel this route, Jones necessarily crossed three lanes of one-way traffic at a forty-five-degree angle, drove through a shoulder with solid white lines on either side, and disregarded a raised concrete divider to his left. There were numerous maps and images of the area admitted into evidence. The following image shows Jones's alleged point-of-view at the intersection of Barshop Blvd. and the frontage road, albeit during the daytime:



One eyewitness also testified that Jones was driving without his headlights on and only turned them on immediately before the collision.

Finally, two witnesses testified that Jones attempted to flee the scene in his vehicle but was unable to do so because his vehicle was inoperable. One of these witnesses told Jones that he could not leave the scene, and the other witness heard Jones respond, "I

---

[2] There were two other possible routes Jones could have taken: he could have been traveling the correct direction on the frontage road and made a U-Turn onto the exit ramp, or he could have already been traveling the wrong direction on the frontage road when he turned onto the exit ramp.

4

got to get out of here. I got to get out of here."

Jones acknowledged at trial that he had two beers several hours earlier in the evening but strenuously disputed that he was intoxicated or that alcohol contributed in any way to the incident. According to his timeline of events, Jones consumed these two beers at home while he was having dinner with his family; he later met up with friends at The Block, a food truck park near the University of Texas at San Antonio; and he spent a few hours with these friends but did not consume any alcohol during this period. Jones argued that the collision was nothing more than a tragic yet relatable accident because it is not uncommon for someone to mistakenly drive the wrong way down a street. On that score, he called an accident reconstruction expert who testified that there should have been a one-way sign at the above intersection to apprise Jones that he could not turn left onto the exit ramp.

Other experts called by Jones testified that the results from the field sobriety tests and blood draw were not credible. One of those experts testified that it was improper to administer field sobriety tests to Jones because he had just been involved in a serious auto accident and was complaining about a head injury. According to that expert, the results were unreliable because a person with head trauma can exhibit the same clues that indicate intoxication on the tests. Two other experts testified that the nurse who conducted the blood draw and the laboratory that tested the sample both made mistakes that compromised the BAC results. According to these experts, each of those mistakes could have caused a falsely elevated BAC in the sample. Jones also offered evidence indicating that his headlights were on the entire trip that night. He also suggested that the

police made a rush to judgment and were biased because of a prior unrelated incident involving Jones's employer, the U.S. Marshals Service. Finally, Jones sought to shift blame for the accident to McCowan by presenting evidence that she had a delayed reaction to the impending accident and implying that she may have been distracted or impaired.

The State countered with evidence indicating that Jones was not seriously injured in the accident, and therefore, the results from the field sobriety tests were reliable. Specifically, Jones did not initially complain about a head injury, only his wrist. When an officer asked him directly whether his head was injured, Jones initially responded "no" before changing his answer several minutes later. The State also introduced evidence that Jones was medically cleared when he was brought before a magistrate that night. Finally, the State attacked the credibility of the experts who were critical of the blood draw results.

The jury found Jones not guilty of intoxication manslaughter, but guilty of manslaughter, and it assessed his punishment as described above. This appeal ensued.

## II.    DOUBLE JEOPARDY

By his first issue, Jones argues that his conviction under Count II violated his right to be free from successive prosecutions under the Double Jeopardy Clause. *See* U.S. CONST. amends. V, XIV.

## A.    Applicable Law

"The Double Jeopardy Clause, enforceable against the states through the Fourteenth Amendment, protects against repeated prosecutions for the same offense

(whether following conviction or acquittal at the conclusion of the first prosecution) and against multiple punishments for the same offense stemming from a single prosecution." *Ex parte Chaddock*, 369 S.W.3d 880, 882 (Tex. Crim. App. 2012) (footnotes omitted). Thus, there are three kinds of double jeopardy claims: (1) multiple punishments for the same offense; (2) a second prosecution for the same offense after acquittal; and (3) a second prosecution for the same offense after conviction. *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014); *Brown v. Ohio*, 432 U.S. 161, 165 (1977).

## B.    Analysis

The parties agree that Count I and Count II were the same offense for double jeopardy purposes. *See Ervin v. State*, 991 S.W.2d 804, 817 (Tex. Crim. App. 1999). (holding that "manslaughter and intoxication manslaughter are the same offense for double jeopardy purposes when they involve the same victim"). But contrary to Jones's suggestion,[3] the State was permitted to prosecute Jones for both offenses, *see Ex parte Aubin*, 537 S.W.3d 39, 43 (Tex. Crim. App. 2017), and the trial court was authorized to submit both counts to the jury. *See Ball v. United States*, 470 U.S. 856, 865 (1985) ("If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts [that are the same for double jeopardy purposes], he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the district judge should enter judgment on only one of the statutory offenses."). If the jury had returned guilty verdicts on both counts and the trial court rendered a

---

[3] At oral argument, Jones argued that the eventual double-jeopardy violation began at the charging stage because the State improperly charged Jones with two offenses that were the same for double-jeopardy purposes.

judgment of conviction on both counts, then a double-jeopardy violation would have occurred, and Jones would be entitled to have the lesser conviction vacated. *See id.*; *Ex parte Aubin*, 537 S.W.3d at 43 ("It is only upon entry of a judgment for multiple offenses, after sentencing, that a multiple-punishments violation even occurs."). Or, if the State had only prosecuted Jones on the intoxication manslaughter count and the jury acquitted him of that offense, then the State would be precluded from prosecuting him a second time for manslaughter. *See Garfias*, 424 S.W.3d at 58; *Brown*, 432 U.S. at 165. The inverse is also true: if the State had only prosecuted Jones on the manslaughter count and the jury convicted him of that offense, then the State would be precluded from prosecuting him a second time for intoxication manslaughter. *See Garfias*, 424 S.W.3d at 58; *Brown*, 432 U.S. at 165. Because none of those circumstances are present here, Jones's conviction for manslaughter in the same prosecution where he was also acquitted of intoxication manslaughter does not implicate his double-jeopardy rights. *See Garfias*, 424 S.W.3d at 58; *Brown*, 432 U.S. at 165.

Nevertheless, Jones maintains that we should not disregard the sequence of events in this case, that because he was first acquitted on Count I, his subsequent conviction under Count II was tantamount to a successive prosecution. We are aware of no authority holding that a successive-prosecution violation can arise in a single prosecution, and Jones has pointed us to none. The double-jeopardy right against successive prosecutions protects the accused from the "embarrassment, expense and ordeal of repetitive trials, compelling the accused to live in a continuing state of anxiety and insecurity, and creating a risk of conviction through sheer governmental

8

perseverance." *Ex parte Chaddock*, 369 S.W.3d at 886 (cleaned up) (first quoting *Green v. United States*, 355 U.S. 184, 187–88 (1957); and then quoting *Tibbs v. Florida*, 457 U.S. 31, 41 (1982)). We fail to see how any of those concerns surface in a single trial, especially when the State acted within its authority to prosecute Jones on multiple counts that were the same for double jeopardy purposes. *See Ex parte Aubin*, 537 S.W.3d at 43.

In sum, Jones was neither punished twice for the same offense nor subjected to the harms of a second prosecution after a conviction or acquittal for the same offense. Accordingly, his first issue is overruled.

### III.    LEGAL SUFFICIENCY

Jones next argues that the evidence was legally insufficient to support his conviction for manslaughter.

### A.    Standard of Review & Applicable Law

To satisfy constitutional due process requirements, a criminal conviction must be supported by sufficient evidence. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). "Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a legal sufficiency review, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021). We defer to the jury's role as the factfinder, which includes "resolving conflicts in

9

the testimony, weighing the evidence, and drawing reasonable inferences from basic facts." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (quoting *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007)). We consider "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray*, 457 S.W.3d at 448 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

We measure the sufficiency of the evidence against "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* The hypothetically correct jury charge in this case would require the jury to find beyond a reasonable doubt that Jones recklessly caused the death of McCowan. *See* TEX. PENAL CODE ANN. § 19.04(a). "A person acts recklessly, or is reckless, with respect . . . the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur." *Id.* § 6.03(c); *see Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013) ("Manslaughter is a result-oriented offense."). Further, "[t]he risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances

10

as viewed from the actor's standpoint." TEX. PENAL CODE ANN. § 6.03(c). Recklessness, like all culpable mental states, is generally proven through circumstantial evidence. *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998). This includes inferences drawn from the acts, words, and conduct of the accused. *Id.*

## B.    Analysis

Jones contends that, because his alleged intoxication was the State's primary theory under both counts and the jury implicitly rejected the State's evidence of intoxication by acquitting him on Count I, we should disregard evidence of his intoxication in assessing whether the evidence was sufficient to show that his conduct was reckless. According to Jones, this is the only way to harmonize what he views as plainly inconsistent verdicts. Building on this premise, Jones argues that the remaining evidence is insufficient to show that he consciously disregarded the substantial danger of driving the wrong way. He posits that only a suicidal person would knowingly drive the wrong way on a highway and there was no evidence that he "ever knew, before it was too late, that he was traveling the wrong way on an exit ramp." Instead, the evidence only shows that he made an inadvertent mistake, which is insufficient to show recklessness.

He also argues that even if the jury concluded that he had consumed some alcohol but was not intoxicated, this would be insufficient to show recklessness because "consuming alcohol in such a way that one does not become intoxicated implicates no legal culpability whatsoever." To hold otherwise, Jones claims, would invade the province of the Legislature to define criminal culpability for driving while intoxicated. He suggests that appellate courts, including our own, have perpetuated a "legal fiction" that a

11

defendant who is not legally intoxicated can still be "under the influence of alcohol" or impaired, and that such a condition can be considered in determining causation in cases like this one. Jones contends that the Legislature has broadly defined intoxication to include someone "not having the normal use of mental or physical faculties" by reason of their alcohol consumption. *See* TEX. PENAL CODE ANN. § 49.01(2)(A). And given the broadness of this definition, Jones reasons that a person is either intoxicated or they are not because the definition leaves no room for a third category of persons who are impaired but not intoxicated.

To begin, the two verdicts in this case are not inconsistent. As Jones acknowledges, several courts of appeals, including our own, have recognized that evidence of impaired driving that does not rise to the level of intoxication can be used to show recklessness. *Turner v. State*, 435 S.W.3d 280, 286 (Tex. App.—Waco 2014, pet. ref'd) ("Driving after consuming alcohol without establishing intoxication can be alleged as a reckless act in an indictment for manslaughter."); *Rubio v. State*, 203 S.W.3d 448, 452 (Tex. App.—El Paso 2006, pet. ref'd) (finding that driving under the influence of alcohol can be used to show conscious disregard of substantial risk); *see also Galvan v. State*, No. 13-14-00059-CR, 2016 WL 1393507, at *5 (Tex. App.—Corpus Christi–Edinburg Apr. 7, 2016, pet. ref'd) (mem. op., not designated for publication) (same); *Elliot v. State*, No. 13-13-00220-CR, 2015 WL 1869472, at *3 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2015, no pet.) (mem. op., not designated for publication) (same); *Buie v. State*, No. 03-02-00280-CR, 2003 WL 21189757, at *2 (Tex. App.—Austin May 22, 2003, no pet.) (mem. op., not designated for publication) (holding that a jury can

determine whether a person's decision to drive after consuming alcohol shows requisite degree of risk to establish recklessness without having to consider if the consumption of alcohol deprived the person of the normal use of their physical and mental faculties as required to prove intoxication). Of course, we are bound by the precedent of the transferor court, *see* Tᴇx. R. Aᴘᴘ. P. 41.3, but Jones has not pointed us to any contrary holding from the Fourth Court of Appeals (or any other court, for that matter). Therefore, until the Texas Court of Criminal Appeals directs us otherwise, it is entirely possible for a jury, without being inconsistent, to simultaneously find that the State failed to prove intoxication beyond a reasonable doubt but that a driver's consumption of alcohol was nevertheless a contributing fact that shows recklessness.

Regardless, even if the verdicts in this case were inconsistent, "the law does not bar inconsistent verdicts." *Guthrie-Nail v. State*, 506 S.W.3d 1, 6 (Tex. Crim. App. 2015). Moreover, our legal sufficiency standard requires us to consider *all* the evidence in the record in the light most favorable to the verdict under review. *Hammack*, 622 S.W.3d at 914. This is true regardless of whether the jury returned an inconsistent verdict on another count. *United States v. Powell*, 469 U.S. 57, 66–67 (1984) (holding that a defendant's only recourse against inconsistent verdicts is a legal sufficiency review on the guilty verdict and this "review should be independent of the jury's determination that evidence on another count was insufficient" because any attempt to determine the jury's reasons for reaching inconsistent verdicts would require pure speculation and involve an improper inquiry into the jury's deliberations); *Hernandez v. State*, 556 S.W.3d 308, 321 (Tex. Crim. App. 2018) (Richardson, J., concurring) ("Where a multi-count verdict appears

13

inconsistent, our inquiry is limited to a determination of whether the evidence is legally sufficient to support the count on which a conviction is returned."); *Thomas v. State*, 352 S.W.3d 95, 101 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ("Inconsistent verdicts do not necessarily imply that the jury convicted the defendant on insufficient evidence, but may simply stem from the jury's desire to be lenient or to execute its own brand of executive clemency."); *see also Moore v. State*, No. 04-12-00490-CR, 2013 WL 3148650, at *1 (Tex. App.—San Antonio June 19, 2013, pet. ref'd) (mem. op., not designated for publication) ("Inconsistent verdicts in prosecutions based on the same evidence do not require a reversal on the ground of legal insufficiency."). With these ground rules in mind, we turn to the record, including evidence that Jones chose to drive after consuming alcohol.

Viewing the evidence in the light most favorable to the verdict, the record establishes the following facts: Jones admitted that he consumed two beers earlier in the evening; approximately thirty minutes after the collision, Jones failed all three field sobriety tests and exhibited other clues of intoxication; and approximately two hours after the accident, Jones's BAC of 0.177 was more than twice the per se level of intoxication. *See* TEX. PENAL CODE ANN. § 49.01(2)(B). The jury also received evidence that Jones disregarded multiple traffic control devices when he drove the wrong way up the exit ramp and that he was driving with his headlights off until immediately before the accident. Courts have routinely found this constellation of facts sufficient to show recklessness. *See Griffith v. State*, 315 S.W.3d 648, 652 (Tex. App.—Eastland 2010, pet. ref'd) (holding evidence sufficient to uphold manslaughter conviction where defendant chose to drive

14

despite being intoxicated and failed to control van in a safe manner); *see also Sanders v. State*, No. 02-18-00539-CR, 2020 WL 5242436, at *6 (Tex. App.—Fort Worth Sept. 3, 2020, pet. ref'd) (mem. op., not designated for publication) (holding evidence that driver was under the influence and driving on the wrong side of the road was sufficient to support conviction for manslaughter even though jury acquitted defendant of intoxication manslaughter); *Galvan*, 2016 WL 1393507, at *5 (finding evidence of alcohol consumption and inattentive driving sufficient to show recklessness); *Elliot*, 2015 WL 1869472, at *3–4 (finding evidence sufficient to support conviction for manslaughter where driver admitted that she was intoxicated and distracted when she fatally struck a pedestrian).

Jones contends that his experts completely destroyed the State's evidence of intoxication or impairment. Jones undoubtedly put on a vigorous defense, but it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Based on the jury's verdict, we presume the jury found the State's evidence more compelling. *See Murray*, 457 S.W.3d at 448–49 ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination.").

Finally, the State offered evidence of consciousness of guilt; namely, that Jones attempted to flee the scene in his vehicle and told a witness, "I got to get out of here." *See Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) (noting that evidence of flight evinces a consciousness of guilt); *see also Longoria v. State*, No. 13-22-00222-CR,

15

2023 WL 6631728, at *7 (Tex. App.—Corpus Christi–Edinburg Oct. 12, 2023, pet. ref'd) (mem. op., not designated for publication) (same). Although Jones offered alternative explanations for his conduct, we again must defer to the jury's verdict. *See Murray*, 457 S.W.3d at 448–49.

Based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of manslaughter beyond a reasonable doubt. Jones's second issue is overruled.

## IV. EXCLUSION OF EVIDENCE

By his third and fourth issues, Jones complains about the exclusion of certain evidence.

### A. Standard of Review

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021). Given the deferential nature of this standard, we will uphold the trial court's decision if it falls within the zone of reasonable disagreement. *Id.* "A party may claim error in a ruling to . . . exclude evidence only if the error affects a substantial right of the party and . . . a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." TEX. R. EVID. 103(a)(2); *accord* TEX. R. APP. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). Thus, "[t]he erroneous exclusion of evidence offered under the rules of evidence generally constitutes non-constitutional error and is reviewed under Rule 44.2(b)." *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). In assessing

16

harm under that rule, we consider "everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Vasquez v. State*, 501 S.W.3d 691, 701 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (quoting *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)). "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (first citing TEX. R. APP. P. 44.2(b); and then citing *King v. State*, 953 S.W.2d 266 (Tex. Crim. App. 1997)).

## B.    Optional Completeness Rule

There were three witnesses to the incident who were traveling behind McCowan on Loop 1604. These witnesses also stopped to render aid. Two of those witnesses, Sandtisha and Ti'Anna Gardner, testified at trial, but the third witness, Christopher Avila, died before trial and was therefore unavailable to testify. The State and Jones agreed that Avila's 911 call was admissible as an excited utterance and present sense impression. *See* TEX. R. EVID. 803(1), (2). But Jones asked that the trial court also admit Avila's audio recorded statement to police, given approximately fifty minutes after the accident, under the optional completeness rule. Jones explained to the trial court that Avila's statement was important "[b]ecause he says things that are absolutely in contradiction with what the [Gardners] testified to; namely, the lights on [Jones's] truck were definitely on." The State objected to the introduction of Avila's recorded statement on the basis that it was hearsay

17

and that no exception applied. The trial court agreed with the State and sustained the objection.

On appeal, Jones contends that the trial court abused its discretion because the statement was admissible under the optional completeness rule. *See* TEX. R. EVID. 107 ("If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent."); *Castillo v. State*, 573 S.W.3d 869, 877 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) ("The rule of optional completeness is an exception to the hearsay rule." (citing *Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011))). He further argues that this error affected his substantial rights because this evidence supported his defensive theories that he was not intoxicated and that McCowan was partially to blame for the collision.[4]

In its opening brief, the State acknowledges that the statement was admissible under the optional completeness rule but argues that any error in excluding the statement was harmless because: (1) the statement was cumulative of other evidence in the record supporting Jones's contention that his headlights were on; and (2) the question of whether

---

[4] We note that, even if McCowan's alleged inattentiveness was a contributing factor to the collision, it would not absolve Jones of criminal culpability. *See Cyr v. State*, 665 S.W.3d 551, 557 (Tex. Crim. App. 2022) ("Further evidencing § 6.04(a)'s breadth, an actor need not be the sole cause of the harm. Causation is established where the conduct of the defendant is the 'but for' cause 'operating alone or concurrently with another cause.'" (quoting TEX. PENAL CODE ANN. § 6.04(a))). After all, as Jones admits in his brief, "there was *clearly* sufficient evidence that [Jones] caused the accident that killed [McCowan]." (Emphasis added).

18

Jones had his headlights on was only a minor part of the State's theory of causation, which rested largely on Jones's alcohol consumption and the fact that he was driving the wrong way. In a supplemental brief, the State additionally argues that, upon further review of the record, there was no adverse ruling to appeal from because the trial court subsequently allowed Jones to introduce Avila's statement that Jones's headlights were on through the testimony of Detective Maria Salazar. We agree with the State that Jones cannot complain about the exclusion of evidence that was later admitted, even if the evidence was presented through a witness rather than an audio recording.

A trial court is free to revisit a previous ruling on the admissibility of evidence. *Black v. State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012). After initially disallowing Avila's recorded statement on the first day of trial, Jones asked the trial court to reconsider its decision on the fifth day of trial and allow him to question Detective Maria Salazar about Avila's statement because she relied on it in assessing fault for the accident. Over the State's continued hearsay objection, the trial court agreed, and Jones questioned Detective Salazar at length about whether Avila reported seeing Jones's headlights on. She confirmed multiple times that Avila did see Jones's headlights as Jones was driving up the ramp. In fact, Avila told her that he began honking at McCowan prior to the accident. Along similar lines, Detective Salazar agreed that whether Jones had his headlights on was relevant because it could have alerted McCowan "to the danger" of Jones's oncoming vehicle and aided her in avoiding the collision. Detective Salazar also acknowledged that the statements of the three witnesses regarding this fact were inconsistent because Ti'Anna told her that Jones turned his headlights on immediately

19

before the accident and Sandtisha reported that she was unsure whether Jones's headlights were on. Given these inconsistencies, Detective Salazar admitted that she did not attribute fault to Jones on the basis that his headlights were off; instead, she concluded in her report that Jones caused the accident because he was intoxicated and drove the wrong way. We hold that any error in excluding Avila's statement with respect to the headlights was rendered harmless by the subsequent testimony of Detective Salazar. *See Robison v. State*, 461 S.W.3d 194, 200 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (holding that any error in excluding book of poetry was harmless because appellant later testified about the contents of the book); *Johnson v. State*, 925 S.W.2d 745, 749 (Tex. App.—Fort Worth 1996, pet. ref'd) (holding that the exclusion of evidence is harmless if the nature of the evidence is established through other means); *cf. Aguilera v. State*, 75 S.W.3d 60, 68 (Tex. App.—San Antonio 2002, pet. ref'd) ("It is well-established that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence.").

Nevertheless, Jones argues on appeal that there were other parts of Avila's recorded statement that would have aided his defensive theories on causation. For example, Jones argues that "Avila's statement also was relevant to rebut the State's repeated, speculative claim that Jones was deliberately attempting to flee the scene of the accident." But in the recording, Avila told Detective Salazar that Jones "started his vehicle like he was going to leave, and a whole bunch of fluid started coming out from his engine." Avila continued, "I was trying to make sure that he wasn't leaving. . . . I got him to turn his car off, and then he turned it back on again. And then I asked him if he would

20

get out." Therefore, contrary to Jones's suggestion, Avila's statement was entirely consistent with the Gardners' testimony that Jones attempted to leave the scene in his vehicle. Avila also disagreed with the idea that McCowan braked at the "last minute," saying instead that she slammed on her brakes and tried to avoid the collision by turning her vehicle. Although he apparently saw Jones's headlights first and began honking at McCowan,[5] Avila also said that he had been traveling behind McCowan for a while, that "she was driving perfectly fine," and that he "had no reason to believe she was impaired." The one statement that he did make that was potentially beneficial to Jones was that he did not smell any alcohol on Jones, but he also qualified his statement by saying that "the fumes" from the leaking fluids were "very strong." Simply put, the remainder of Avila's statement was not particularly helpful to Jones. Therefore, even if the trial court erred in not admitting the entire recording, Jones has failed to demonstrate that the error had "a substantial and injurious effect or influence in determining the jury's verdict." *See Morales*, 32 S.W.3d at 867 (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)), (explaining what constitutes reversible error under Rule 44.2(b)). Jones's third issue is overruled.

## C.    Expert Testimony

By his final issue, Jones argues that the trial court erred by disallowing his accident reconstruction expert from testifying about the plausibility that Jones traveled up Barshop Blvd. prior to the accident. On voir dire, the expert admitted that he was relying on a

---

[5] The fact that Avila began honking at McCowan before the collision was not in dispute as both of the Gardners testified to this fact.

21

conversation he had with Jones about the route Jones had traveled prior to the collision. The State objected that Jones was attempting to admit backdoor hearsay, and the trial court sustained the objection.

On appeal, Jones argues that the trial court erred because experts are generally allowed to rely on inadmissible evidence in forming their opinions and that "[t]he appropriate remedy is for the opposing party to cross-examine the witness about the sources of his opinion, not to exclude the opinion outright." *See* TEX. R. EVID. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."); *Morris v. State*, 123 S.W.3d 425, 428 (Tex. App.—San Antonio 2003, pet. ref'd). Jones acknowledges that his "expert was later able to discuss the inadequacy of the signage in this general area to apprise a driver that he cannot turn onto the ramp." But he claims that "the context of this testimony was utterly lost because the expert was precluded from explaining why the route from Barshop [Blvd.] to the exit ramp was a reasonably plausible route for Jon[es] to have taken."

The State responds that the trial court was within its discretion to disallow the testimony and points us to analogous federal case law for the proposition that expert testimony should not be used as a "conduit" for inadmissible hearsay. *United States v. Lundy*, 809 F.2d 392, 395 (7th Cir. 1987) (agreeing "that 'expert' testimony based solely on hearsay and third-party observations that are adequately comprehensible to lay people would be improper to admit under Rule 702." (citing *Salem v. U.S. Lines Co.*, 370 U.S.

22

31, 35 (1962))). According to the State, the jury was well equipped to judge the plausibility of traveling from The Block to the accident cite via Barshop Blvd. without the aid of expert testimony. The State also argues that any error was harmless because other evidence in the record suggested that Jones took this route, and therefore, the context of the expert's testimony was not lost on the jury. We agree with the State that any error in excluding this testimony was harmless.

First, as a general proposition, we disagree with the idea that the jury was "utterly lost" without this testimony. The record reflects that the jury was well acquainted with the Barshop Blvd. route before Jones's expert testified. During his opening statement, Jones flatly told the jury that he had traveled along Barshop Blvd. prior to the accident. He continued to reinforce his defensive theory by cross-examining multiple State witnesses about the Barshop Blvd. route. Then his expert testified that the signage at the intersection of Barshop Blvd. and the frontage road was inadequate to apprise Jones that he could not turn left onto the exit ramp. Obviously, that opinion is only relevant if Jones took the Barshop Blvd. route, and we are confident that the jury made that connection. Thus, counter to Jones's argument, "the context" of the expert's testimony was readily apparent to the jury.

In any event, such evidence would have been cumulative. Indeed, as Jones acknowledges in his brief, "[t]he maps received into evidence demonstrate that Barshop Blvd. is the most direct route from [T]he Block to the exit on Loop 1604 where the accident occurred." He also admits that these maps "supported the inference that Jones had traveled up Barshop Blvd." Therefore, any error in excluding the expert's testimony about

23

the plausibility of this route was harmless. *See* TEX. R. APP. P. 44.2(b); *Robison*, 461 S.W.3d at 200; *Johnson*, 925 S.W.2d at 749. Jones's final issue is overruled.

**V.     CONCLUSION**

We affirm the trial court's judgment of conviction.

GINA M. BENAVIDES
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
19th day of December, 2024.

24