

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00165-CR

**ANDRE DUANE BOYD,**

                                              **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                              **Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2022-737-C1

## MEMORANDUM OPINION

Following a jury trial, Andre Duane Boyd was convicted of aggravated robbery, aggravated assault against a public servant, and evading arrest or detention with a vehicle. TEX. PENAL CODE ANN. §§ 22.02(b)(2)(B), 29.03(a), 38.04. After pleading "true" to two felony enhancement paragraphs, he was sentenced to serve fifty years in prison on each count. *Id.* at § 12.42(d). On appeal, Boyd raises issues concerning the trial court's mid-trial alteration of the indictment, the sufficiency of the evidence, double jeopardy,

the trial court's denial of his pretrial motion to suppress evidence and motion to quash the indictment, the trial court's exclusion of his expert witness, and ineffective assistance of trial counsel. We affirm.

## Alteration of the Indictment

In his first issue, Boyd argues that the trial court violated Article 28.10 of the Texas Code of Criminal Procedure by striking the word "serious" from Count Two of the indictment after trial commenced and over his objection. *See* TEX. CODE CRIM. PROC. ANN. art. 28.10. He contends that the alteration constituted an improper amendment of the indictment. We disagree.

AUTHORITY

Article 28.10 of the Code of Criminal Procedure prohibits the amendment of an indictment after trial on the merits commences if the defendant objects. TEX. CODE CRIM. PROC. ANN. art. 28.10(b), (c). However, not all alterations to an indictment are "amendments." *Eastep v. State*, 941 S.W.2d 130, 132 (Tex. Crim. App. 1997), *overruled on other grounds by Riney v. State*, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000) and *Gollihar v. State*, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001). The Court of Criminal Appeals has drawn a distinction between the "amendment" of an indictment and the "abandonment" of language in an indictment. *Eastep*, 941 S.W.2d at 132-34. The State may abandon an allegation of one or more alternative means of committing an offense even after trial has commenced and over the defendant's objection without violating Article 28.10. *Id*. at 135;

*Moore v. State*, 54 S.W.3d 529, 546-47 (Tex. App.—Fort Worth 2001, pet. ref'd). While an amendment to an indictment must be memorialized by some kind of writing in the trial court's file, no writing is required to accomplish an abandonment. *See Riney*, 28 S.W.3d at 565-66; *Dawson v. State*, No. 10-01-00202-CR, 2003 Tex. App. LEXIS 10873, 2003 WL 23120062, at *3 (Tex. App.—Waco Dec. 31, 2003, no pet.) (mem. op., not designated for publication) (citing *Proctor v. State*, 841 S.W.2d 1, 2, 4 (Tex. Crim. App. 1992)).

DISCUSSION

Here, Count Two of the indictment charged Boyd with aggravated assault against a public servant, alleging that he:

> did then and there intentionally, knowingly, and recklessly cause serious bodily injury to ROY LUNA, hereafter styled the complainant, by causing ROY LUNA to strike and/or hit a motor vehicle and/or causing ROY LUNA to be pinned between the door and the motor vehicle operated by the Defendant, and the Defendant did then and there use or exhibit a deadly weapon, namely a motor vehicle, during the commission of the assault, and the Defendant did then and there know that the complainant was then and there a public servant, namely a police officer, and the complainant was then and there lawfully discharging an official duty, namely preventing the commission of a theft[.]

After the jury was sworn and jeopardy attached, the State moved to strike the word "serious" from Count Two of the indictment. Defense counsel objected, and the trial court initially denied the State's request. The State later re-urged its motion and argued that removing the word "serious" would constitute an abandonment instead of an amendment to the indictment. Over defense counsel's objection, the trial court orally

granted the State's motion, stating, "I'm going to grant the State's motion to abandon and I will strike that word from the indictment."[1]

As applicable here, a person commits an assault if he "intentionally, knowingly, or recklessly causes bodily injury to another," and a person commits aggravated assault if he "commits assault" and either "causes serious bodily injury to another" or "uses or exhibits a deadly weapon during the commission of the assault." *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02. The offense is elevated to a first-degree felony if it is committed "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty." *Id.* at 22.02(b)(2)(B). The State's abandonment of the word "serious" was effectively an abandonment of an alternate means of committing the offense. *See Dawson*, 2003 Tex. App. LEXIS 10873, at *4-5. The State proceeded under the statutory means of committing aggravated assault against a public servant by causing bodily injury while using or exhibiting a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 22.02(a)(2), (b)(2)(B).

Because this alteration was an abandonment instead of an amendment, the requirements of Article 28.10 were not invoked. *Hardie v. State*, 79 S.W.3d 625, 632 n. 1 (Tex. App.—Waco 2002, pet. ref'd). A written memorialization in the court's file was not

---

[1] The original clerk's record filed in this appeal included a copy of the indictment that was not physically altered. The trial court clerk, in response to an order of this Court, later filed a supplemental clerk's record that included an altered version of the indictment in which it appeared that the trial court struck through the word "serious" and initialed the alteration. Boyd subsequently filed two documents and a reply brief arguing that the physically-altered indictment was fraudulent. The physically-altered indictment is not necessary to the resolution of this appeal; therefore, we do not consider it. *See* TEX. R. APP. P. 47.1.

required to effectuate the change. *See Dawson*, 2003 Tex. App. LEXIS 10873, at *5. Additionally, the State may dismiss, waive, or abandon a portion of an indictment after jeopardy attaches by not objecting to its omission from the jury charge. *See Ex parte Preston*, 833 S.W.2d 515, 517 (Tex. Crim. App. 1992); *Saxon v. State*, 430 S.W.3d 555, 558 (Tex. App.—Dallas 2014, no pet.). In this case, the means of committing aggravated assault by causing "serious bodily injury" was not included in the jury charge, and neither the State nor defense counsel objected to its omission.

Accordingly, Boyd's first issue is overruled.

## Sufficiency of the Evidence

In his second issue, Boyd argues that the State was required to prove in Count Two that he caused "serious bodily injury" to the complainant instead of "bodily injury" as defined in the jury charge because striking the word "serious" was an improper amendment to the indictment. He contends that the evidence was insufficient to support a finding of "serious bodily injury."

AUTHORITY

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the

appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

We have already determined that the deletion of the word "serious" from the indictment was an abandonment rather than an amendment. The State is not required to prove an abandoned allegation. *See Eastep*, 941 S.W.2d at 133-34. Therefore, we will not review the sufficiency of the evidence to support the abandoned allegation of aggravated assault against a public servant by causing "serious bodily injury." Boyd does not argue that the evidence was insufficient to prove "bodily injury" as required in Count Two.

Accordingly, Boyd's second issue is overruled.

## Double Jeopardy

In his third issue, Boyd contends that his convictions for aggravated robbery and aggravated assault against a public servant violate the Double Jeopardy Clauses of the United States and Texas Constitutions because as pled, aggravated assault against a public servant is a lesser-included offense of aggravated robbery. We disagree.

AUTHORITY

The Double Jeopardy Clause protects individuals against successive prosecutions for the same offense following an acquittal or a conviction and against multiple punishments for the same offense in a single prosecution. *See Ex parte Chaddock*, 369 S.W.3d 880, 882 (Tex. Crim. App. 2012) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)); *Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021). One way in which a multiple-punishments claim may arise is "where there

are both a greater and a lesser-included offense and the same conduct is punished twice—

once for the basic conduct and a second time for that conduct plus more[.]" *Ex parte*

*Denton*, 399 S.W.3d 540, 545 (Tex. Crim. App. 2013).

The Texas Code of Criminal Procedure provides that an offense is a lesser-

included offense if:

>   (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

>   (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

>   (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

>   (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09. The first step in determining whether an offense

is a lesser-included offense is a question of law. *Hall v. State*, 225 S.W. 3d 524, 535 (Tex.

Crim. App. 2007). It must be performed by comparing the elements of the offense as

alleged in the indictment with the elements of the potential lesser-included offense. *Id.*

at 535-36. Under the "cognate-pleadings" approach, "the court looks to the facts and

elements as alleged in the charging instrument, and not just to the statutory elements of

the offense, to determine whether there exists a lesser-included offense of the greater

charged offense." *Id.* at 526. When comparing the statutory elements of two offenses, we

must determine whether each statutory offense requires proof of a fact that the other does

not. *See Ex parte Castillo*, 469 S.W.3d 165, 168 (Tex. Crim. App. 2015) (citing *United States v. Dixon*, 509 U.S. 688, 697, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)). "[L]esser-included offenses are legally the same as a greater offense, and are wholly subsumed by the elements of the greater offense, unless the potential lesser-included offense requires proof of a fact not required to establish the greater offense." *Id.*

DISCUSSION

Boyd claims that the elements of aggravated assault against a public servant were "completely subsumed" within the elements of aggravated robbery, arguing that pursuant to *Ex parte Denton*, "as plead [sic], aggravated assault is a lessor [sic] included offense of aggravated robbery, because it is well established by proof of the same or less than all the facts required to establish the commission of the offense charged." *See Denton*, 399 S.W.3d at 545-46.

Boyd's contention that aggravated assault against a public servant is a lesser-included offense of aggravated robbery requires us to consider the statutory elements of aggravated robbery as alleged in the indictment. Here, the elements of aggravated robbery as alleged in the indictment included:

(1) Boyd;

(2) on or about August 18, 2019;

(3) while in the course of committing theft of property and with intent to obtain or maintain control of the property,

(4) intentionally, knowingly and recklessly caused bodily injury to Roy Luna;[2] and

(5) did then and there use or exhibit a deadly weapon, namely, a motor vehicle.

*See* TEX. PENAL CODE ANN. §§ 29.02(a)(1), 29.03(a)(2).

We then compare these elements with the elements of the offense of aggravated assault against a public servant. Here, the elements of aggravated assault against a public servant as alleged in the indictment and altered by the State's motion to abandon the word "serious" included:

(1) Boyd;

(2) on or about August 18, 2019;

(3) intentionally, knowingly, and recklessly caused bodily injury to Roy Luna;

(4) knowing that Roy Luna was then and there a public servant, namely, a police officer, and Roy Luna was lawfully discharging an official duty, namely, preventing commission of a theft; and

(5) used or exhibited a deadly weapon, namely, a motor vehicle, during the commission of the assault.

*See id.* at §§ 22.01(a)(1), 22.02(a)(2), (b)(2)(B).[3]

---

[2] We note that the requisite culpable mental states for each of these offenses are listed in the Penal Code in the disjunctive. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2), 29.02, 29.03. However, the indictment as drafted in this case listed the culpable mental states for Count One and Count Two in the conjunctive, as "intentionally, knowingly *and* recklessly."

[3] As discussed in our analysis of Boyd's first issue, the physical copy of the indictment on the charge of aggravated assault against a public servant states that Boyd caused Sergeant Luna "serious" bodily injury. However, the "serious bodily injury" allegation was abandoned at trial, and Boyd was convicted of the aggravated assault against a public servant offense by causing only "bodily injury" and using or exhibiting

We then ask whether the elements of the lesser offense (aggravated assault against a public servant) are established by proof of the same or less than all the facts required to establish the commission of the greater offense (aggravated robbery).  *See Hall,* 225 S.W.3d at 536; TEX. CODE CRIM. PROC. ANN. art. 37.09(1).  Aggravated assault against a public servant required proof of an elemental fact that aggravated robbery did not: namely, that the offense was committed against a person Boyd knew was a public servant while the public servant was lawfully discharging an official duty.  *See Babineaux v. State*, Nos. 01-06-00608-CR, 01-06-00609-CR, 2007 Tex. App. LEXIS 5278, 2007 WL 1953693, at *25-27 (Tex. App.—Houston [1st Dist.] July 6, 2007, pet. ref'd) (mem. op., not designated for publication).  Therefore, the elements of aggravated assault against a public servant were not "completely subsumed" by the elements of aggravated robbery.

Having compared the elements of each offense as alleged, we conclude that Boyd's conviction for aggravated assault against a public servant is not a lesser-included offense of aggravated robbery in violation of the Double Jeopardy Clauses of the United States and Texas Constitutions as asserted by Boyd.  Accordingly, we overrule Boyd's third issue on appeal.

---

a deadly weapon. Our double jeopardy analysis compares the two offenses of which Boyd was actually convicted.  *See Brown v. State*, 640 S.W.3d 889 (Tex. App.—Waco, 2021, pet. ref'd).

**Motion to Quash Indictment**

In his fourth issue, Boyd argues that the trial court abused its discretion by denying his pre-trial motion to quash the indictment.  We disagree.

Boyd's motion to quash was based on the same double jeopardy arguments presented in his third issue on appeal.  However, the State has the right to prosecute and obtain jury verdicts on multiple offenses in a single trial, even if the offenses are the same for double jeopardy purposes.  *Ex parte St. Aubin*, 537 S.W.3d 39, 43 (Tex. Crim. App. 2017).  "The multiple-punishments protection against double jeopardy does not prohibit multiple jury verdicts of guilt within a single trial but only the imposition of multiple convictions and multiple punishments."  *Ex parte Chapa*, No. 03-18-00104-CR, 2018 Tex. App. LEXIS 6635, 2018 WL 3999741, at *14 (Tex. App.—Austin Aug. 22, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Aubin*, 537 S.W.3d at 43).  It is only upon entry of a judgment for multiple offenses, after sentencing, that a multiple-punishments violation occurs.  *Aubin*, 537 S.W.3d at 43.  Boyd's motion to quash the indictment on double-jeopardy grounds was premature.  Accordingly, we find that the trial court did not abuse its discretion in denying Boyd's motion to quash and we overrule Boyd's fourth issue.

**Motion to Suppress**

In his fifth issue, Boyd argues that the trial court erred in denying his motion to suppress certain evidence.  He takes issue with the trial court's findings of fact and

conclusions of law and argues that the trial court abused its discretion in denying his motion to suppress because Sergeant Luna lacked reasonable suspicion to detain him or probable cause to arrest him. We disagree.

BACKGROUND

The trial court held a hearing on Boyd's motion to suppress. During the hearing, Sergeant Roy Luna was the only witness called to testify. Security camera video capturing the encounter between Sergeant Luna and Boyd was also admitted into evidence at the hearing.

Sergeant Luna testified that he was working security for a department store when he observed Boyd exit the store carrying a bundle of clothing without approaching any of the registers. Sergeant Luna followed Boyd out of the store and asked Boyd if he could speak with him. Boyd stopped and turned around. Sergeant Luna asked Boyd if he had a receipt for the clothing items he was carrying, and Boyd responded that he could not reach the receipt in his pocket because of all the clothing in his hands. Sergeant Luna then noticed that the price tags on the clothing items were missing "POP labels," which he explained were yellow stickers affixed to a price tag by the cashiers when the item had been purchased. At this point, based on his belief that Boyd had not paid for the items he was carrying, Sergeant Luna agreed that Boyd was detained for investigative purposes. Sergeant Luna testified that he grabbed Boyd's shirt and Boyd began to pull away. During this struggle, Boyd and Sergeant Luna pushed and pulled one another and

ended up between two cars. Boyd was able to open the door to a vehicle, throw the clothing on the passenger seat, and get inside of the vehicle. While Sergeant Luna continued to attempt to pull Boyd out of the vehicle, Boyd put the vehicle in reverse. Sergeant Luna was still hanging from the vehicle while Boyd reversed out of the parking space. Boyd subsequently put the vehicle in drive and struck other vehicles in the parking lot.

AUTHORITY

When reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017). We give almost complete deference to the trial court's determination of historical facts and uphold the trial court's findings of fact so long as they are supported by the record. *Id.* We then proceed to a *de novo* determination of "the legal significance of the facts as found by the trial court—including the determination of whether a specific search or seizure was reasonable." *Id.*

When ruling on a motion to suppress, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). Furthermore, we view all the evidence in the light most favorable to the trial court's ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When the trial court prepares findings of fact with its ruling on a motion to suppress, an appellate court does not engage in its own

factual review but determines only whether the record supports the trial court's fact findings. *Flores v. State*, 177 S.W.3d 8, 14 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)). "Unless the trial court abused its discretion by making a finding not supported by the record, we will defer to the trial court's fact findings and not disturb the findings on appeal." *Id.* (citing *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991)). In our review, we address only the question of whether the trial court properly applied the law to the facts. *Id.* (citing *Romero*, 800 S.W.2d at 543).

The Fourth Amendment does not forbid all seizures, just unreasonable seizures. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997). The detention of an individual may be justified on less than probable cause if the individual is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). "A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014) (quoting *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011)). "In determining whether an officer has reasonable suspicion to detain, we look at the totality of the circumstances through an objective lens, disregarding the officer's subjective

intent." *Matthews*, 431 S.W.3d at 603. Although some circumstances may seem innocent in isolation, they will support a detention if their combination leads to a reasonable conclusion that criminal activity is afoot. *Id.*

A warrantless arrest is unreasonable *per se* unless it fits into one of a "few specifically established and well delineated exceptions." *Minn. v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135, 124 L. Ed. 2d 334 (1993) (quoting *Thompson v. La.*, 469 U.S. 17, 19-20, 105 S. Ct. 409, 83 L. Ed. 2d 246 (1984)); *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005). One of those exceptions is when the arresting officer has "probable cause to believe that the suspect has committed or is committing an offense." *Virginia v. Moore*, 553 U.S. 164, 173, 128 S .Ct. 1598, 170 L. Ed. 2d 559 (2008); *Torres*, 182 S.W.3d at 901. Under Texas law, the warrantless arrest must also fall within one of the exceptions specified in Articles 14.01 through 14.04 of the Code of Criminal Procedure, such as when an offense is committed in the officer's presence or within his view. *See* TEX. CODE CRIM. PROC. ANN. art. 14.01(b); *Stull v. State*, 772 S.W.2d 449, 451 (Tex. Crim. App. 1989). Probable cause for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge or of which he has reasonably trustworthy information are sufficient to warrant a reasonable belief that the person arrested had committed or was committing an offense. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009); *Torres*, 182 S.W.3d at 901. A finding of probable cause necessitates more than bare suspicion but less than would justify a

conviction. *Amador*, 275 S.W.3d at 878. The test for probable cause is an objective one; it is unrelated to the subjective beliefs of the arresting officer and it requires a consideration of the totality of the circumstances facing the arresting officer. *Id.*

DISCUSSION

At the conclusion of the hearing, the trial court denied the motion to suppress and subsequently entered written findings of fact and conclusions of law. Boyd contends the evidence is insufficient to support several of the trial court's findings of fact along with conclusion of law number seven. The findings and conclusion complained of are as follows:

8. Defendant began pulling away from Sergeant Luna. There was a brief physical altercation after which Defendant fled to his vehicle with the articles of clothing.

9. Once inside his vehicle, Defendant began to back out of the parking space. Sergeant Luna opened the door and attempted to remove Defendant from the vehicle.

10. Defendant then put the vehicle in drive and attempted to drive away with Sergeant Luna still hanging on from outside the vehicle. Defendant's vehicle struck multiple parked vehicles, ultimately pinning Sergeant Luna between two vehicles, injuring Sergeant Luna.

11. Multiple citizens nearby then assisted in removing the keys and keeping Defendant inside the vehicle until Waco PD arrived.

12. Several Waco PD officers arrived on scene and Defendant was placed under arrest and subsequently indicted on charges of aggravated robbery (Count I) and aggravated assault against a public servant (Count II).

13. The Court finds that the testimony of Sergeant Luna was credible.

14. The Court finds that the testimony of Sergeant Luna was corroborated by Dillard's security camera evidence.

…

7. Once Defendant pulled away and ran to his vehicle, Sergeant Luna had probable cause to place Defendant under arrest for evading detention.

Boyd argues that the finding that he "fled to his vehicle" contained in the trial court's finding number eight is not reflected in the record. Sergeant Luna testified that as he struggled with Boyd, they ended up between two vehicles. He further testified that Boyd got inside of a vehicle and put it in reverse, despite Sergeant Luna's continuing efforts to detain Boyd. Viewing Sergeant Luna's testimony and the video evidence admitted at the hearing in the light most favorable to the trial court's finding number eight, we find that the trial court had sufficient evidence to support a finding that Boyd "fled" to his vehicle.

As to finding number nine, the department store video confirms that Boyd backed out of the parking space, and testimony from Sergeant Luna confirms that he continued to try to pull Boyd from the vehicle. Viewing the evidence in the light most favorable to the trial court's finding number nine, we conclude that the trial court had sufficient evidence to support finding number nine, save and except the finding that Sergeant Luna opened the door to the vehicle which is unsupported by the record before us. We will disregard the unsupported portion of finding number nine. *See Rios v. State*, 665 S.W.3d 467, 478 (Tex. Crim. App. 2022).

In his challenge to finding number ten, Boyd states in his brief that he "objects to the questions concerning what took place after the vehicle was started." We presume Boyd is objecting to questions propounded during the suppression hearing in the trial court. Boyd's objection during the suppression hearing was lodged after testimony from Sergeant Luna confirmed Boyd put the vehicle in reverse during the struggle and that Sergeant Luna was hanging out of the vehicle. After the objection, the State agreed to move on, and Boyd did not pursue a ruling on his objection. Further, the department store security camera video admitted into evidence supports that Boyd put the vehicle in drive and crashed into multiple parked vehicles, and that Sergeant Luna was pinned in between the vehicles. When viewed in the light most favorable to the trial court's finding number ten, we conclude that the trial court had sufficient evidence to support finding number ten, save and except that Sergeant Luna was injured which is unsupported by the record before us. We will disregard the unsupported portion of finding number ten. *See id*.

Finding number eleven is supported by the department store video admitted into evidence at the suppression hearing. The video depicts a number of individuals surrounding Boyd's vehicle while holding the doors so that the doors could not be opened. These individuals continue to hold the doors shut until officers with the Waco Police Department arrive. It is not clear from the video that any of the individuals removed the keys from the vehicle. When the evidence is viewed in the light most

favorable to the trial court's finding number eleven, we conclude that the trial court had sufficient evidence to support finding number eleven save and except that the individuals removed the keys from the vehicle which is unsupported by the record before us. We will disregard the unsupported portion of finding number eleven. *See id.*

Finding number twelve is also supported by the department store video which depicts officers with the Waco Police Department arriving on scene. The video also shows Boyd in handcuffs while officers search him before placing him in the back seat of the patrol vehicle. The clerk's record in this matter contains Boyd's indictment which alleges the offenses of aggravated robbery and aggravated assault against a public servant. Viewing the evidence in the light most favorable to the trial court's finding number twelve, we conclude that the trial court had sufficient evidence to support the finding.

In finding number thirteen, the trial court explicitly found that Sergeant Luna was credible. In a motion to suppress hearing, a trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given their testimony. *Wiede*, 214 S.W.3d at 24-25. Only in narrow circumstances when video evidence provides indisputable evidence contradicting witness testimony and does not pivot on an evaluation of credibility and demeanor should we decline to give "almost total deference" to the trial court's findings. *See Carmouche*, 10 S.W.3d at 332. Furthermore, in finding number fourteen the trial court found that Sergeant Luna's testimony was

corroborated by the department store security camera video. After our review of the record before us, we agree. We will afford the trial court the appropriate deference and not disturb findings thirteen and fourteen.

Boyd next complains that conclusion of law number seven is not reflected in the record. Boyd argues that the record does not reflect that he pulled away or ran to his vehicle, contending that he never broke from Sergeant Luna's grasp and remained in Sergeant Luna's "full commanding detention." Because whether Boyd "pulled away" or "ran" is a determination of historical fact we will give almost total deference to the trial court's finding contained in the conclusion of law. *See id.* at 327. Again, Sergeant Luna's testimony regarding the struggle reflected that Boyd pushed away from Sergeant Luna. However, there is nothing in the record before us that Boyd ran to his vehicle. When viewed in the light most favorable to the trial court's finding contained in conclusion of law number seven, we conclude that the trial court had sufficient evidence to support such finding save and except that Boyd ran to his vehicle which is unsupported by the record before us. We will disregard the unsupported portion of finding number seven. *Rios*, 665 S.W.3d at 478.

Boyd also argues that the trial court erred in denying his motion to suppress because there existed no reasonable suspicion to detain him. Here, Sergeant Luna observed Boyd walking out of the department store carrying clothing items without approaching a register. Boyd was unable to produce a receipt for the clothing items, and

Sergeant Luna could see that the price tags did not have the yellow "POP labels" affixed to them indicating they had been purchased. Sergeant Luna acquired "articulable facts that, when combined with rational inferences from those facts" led him to have a reasonable belief that Boyd was engaged in criminal activity, namely theft. *See Matthews*, 431 S.W.3d at 603 (quoting *Derichsweiler*, 348 S.W.3d at 914). Thus, Sergeant Luna's attempt to detain Boyd was lawful.

Boyd further argues that Sergeant Luna lacked probable cause to arrest him for evading detention because he did not "flee" from Sergeant Luna. A person commits the offense of evading detention if he intentionally flees from a person he knows is a peace officer attempting to detain him. *See* TEX. PENAL CODE ANN. § 38.04. "Fleeing" in the context of evading detention is "anything less than prompt compliance with an officer's direction to stop." *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.). Once Sergeant Luna detained Boyd to investigate the potential theft of clothing items from the department store, Boyd's subsequent refusal to comply with Sergeant Luna's attempts to detain him, viewed under the standards articulated above, supports a determination of probable cause to place Boyd under arrest for evading detention. *See* TEX. PENAL CODE ANN. § 38.04; *Horne*, 228 S.W.3d at 446. Considering the above circumstances, and construing the evidence from the suppression hearing in the light most favorable to the trial court's ruling, we cannot conclude that the trial court abused

its discretion in finding that Sergeant Luna had probable cause to arrest Boyd for the offense of evading detention.

Accordingly, Boyd's fifth issue is overruled.

**Exclusion of Expert Witness**

In his sixth issue, Boyd contends that the trial court abused its discretion by excluding the testimony of his expert witness, Dr. Stephen L. Mark, regarding the potential effects of taser exposure on cognitive impairment and voluntariness of conduct. We disagree.

BACKGROUND

During opening statements, defense counsel stated that Dr. Mark's expert testimony about the effects of a taser on an individual's mind and neuromuscular system would show that Boyd's conduct in this case was involuntary.[4] During trial, the State requested a hearing under Rule 702 of the Texas Rules of Evidence to determine the admissibility of Dr. Mark's testimony. *See* TEX. R. EVID. 702. In the hearing outside of the jury's presence, Dr. Mark stated that he reviewed the police report and EMT ambulance notes from this case as well as articles and studies about tasers, citing throughout his testimony to three specific studies. He also detailed his professional experiences with the impact of various electronic impulses on the body. Dr. Mark intended to "draw

---

[4] The record indicates that Sergeant Luna used a taser on Boyd during the commission of the offenses.

extrapolations and coalitions" from his experiences and from the literature he reviewed to explain how bodily functions and cognitive functioning are affected by taser exposure.

On cross-examination, Dr. Mark testified that he had not personally performed any research involving individuals who had been recently tased, had never personally seen someone tased, and had never evaluated a patient who had been tased within the last hour. He agreed that the most comprehensive research about the effects of tasering on cognitive impairment was the "Examining Cognitive Functioning Following Taser Exposure, a Randomized Controlled Trial" study from 2015, in which the authors ultimately concluded that their results warranted additional study. Dr. Mark further agreed that this is a "developing field" that is in its "infant stages" and stated that "[i]t's still being investigated and they're trying to find out more about it." When the State asked Dr. Mark if there was any accepted methodology for applying this research to an individual, Dr. Mark responded, "Not necessarily." Additionally, Dr. Mark agreed that his professional experiences with electronic impulses and their impacts on the body were different from tasers in that they served different purposes, involved different amounts of electricity, and the electronic impulses were typically applied to different parts of the body and administered in different ways.

At the conclusion of the hearing, the State objected to Dr. Mark testifying as an expert. The trial court sustained the State's objection.

Later during trial, defense counsel made an offer of proof of Dr. Mark's testimony. Ultimately, Dr. Mark testified to his opinion that a taser could impact a person's bodily movement to the point that the person's movements could be involuntary. When asked, "Do you believe that a person who's been tased four times can make a conscious decision," Dr. Mark stated, "It's hard to say 100 percent for sure on that. Again, everybody's system is different…There are a lot of variables there. But, yes, it would be very difficult to be thinking straight under that circumstance."

AUTHORITY

We review a trial court's decision to exclude expert testimony for an abuse of discretion, and we may not reverse those rulings unless they fall outside the zone of reasonable disagreement. *Blasdell v. State*, 384 S.W.3d 824, 829 (Tex. Crim. App. 2012). Three requirements must be met before the trial court can admit expert testimony: "(1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." *See* TEX. R. EVID. 702, 705; *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006) (citing *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006)); *Wolfe v. State*, 509 S.W.3d 325, 335 (Tex. Crim. App. 2017). These elements may be more commonly referred to as qualification, reliability, and relevance. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). The proponent of the expert evidence has the

burden to show each of these three requirements by clear and convincing evidence. *See*

*Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

DISCUSSION

The trial court did not provide its reasoning for excluding Dr. Mark's expert testimony. However, the trial court implied concern with the element of reliability through follow-up questioning at the end of the Rule 702 hearing and the offer of proof. "Reliability" focuses on the subject matter of the witness's testimony. *Vela*, 209 S.W.3d at 133. Texas Rule of Evidence 705(c) governs the reliability of expert testimony and states that "[a]n expert's opinion is inadmissible if the underlying facts or data do not provide a sufficient basis for the opinion." TEX. R. EVID. 705(c). Reliability depends upon whether the evidence has its basis in sound scientific methodology, which demands a certain technical showing. *Vela*, 209 S.W.3d at 133. A scientific theory that relates to the facts of a case may be inadequately tested and not have a sufficiently reliable basis. *Id.* Accordingly, the proponent of the expert must establish some foundation for the reliability of the expert's opinion. *Id.* at 134.

Here, the authors of the most comprehensive study on the effects of taser exposure on cognitive impairment and voluntariness of conduct concluded that additional study was warranted. Dr. Mark did not testify to any sound scientific methodology that could be applied in a given case. To the contrary, he testified that this field is in "its infancy," that it is "still being investigated and they're trying to find out more about it," and that

the existing research could "[n]ot necessarily" be applied exactly to an individual. We cannot say that the trial court abused its discretion in excluding Dr. Mark's expert testimony.

Accordingly, we overrule Boyd's sixth issue.

## Ineffective Assistance of Counsel

In his seventh issue, Boyd argues that he received ineffective assistance of trial counsel. We disagree.

AUTHORITY

To prevail on a claim of ineffective assistance of counsel, an appellant must meet the two-pronged test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). *Hernandez v. State*, 726 S.W.2d 53, 55–56 (Tex. Crim. App. 1986) (adopting the two-pronged test set forth in *Strickland*). An appellant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense such that there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 55. In assessing effective assistance of counsel, we must review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Lopez v. State*, 343 S.W. 3d 137, 142–43 (Tex. Crim. App. 2011). A defendant must overcome the strong presumption that trial counsel's decisions and actions fell

within a wide range of professional and reasonable assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

To establish deficiency under the first prong of *Strickland*, it must be proven by a preponderance of the evidence that defense counsel's representation objectively fell below the standard of professional norms. *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009). To show prejudice, it must be shown that there is a reasonable probability that, but for defense counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A "reasonable probability" is a probability sufficient to undermine confidence in the outcome, meaning counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result. *Id.*

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). When the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective requires impermissible speculation by the appellate court. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Thus, absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate or decide an ineffective assistance of counsel claim. *See Bone*, 77 S.W.3d at 833. "[A]n application for writ of habeas corpus is the more appropriate vehicle to raise ineffective assistance of counsel claims." *Rylander*, 101 S.W.3d at 110. To warrant reversal without affording counsel an opportunity to

explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Robert v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

DISCUSSION

Because the record before us is silent regarding the reasons for counsel's challenged conduct, and because in our review of the record counsel's conduct was not so outrageous that no competent attorney would have engaged in it, we overrule Boyd's seventh issue.

## Conclusion

Having overruled all of Boyd's issues on appeal, we affirm the judgments of the trial court.[5]

STEVE SMITH
Justice

Before Justice Smith,
     Justice Harris, and
     Justice Rose[6]
Affirmed
Opinion delivered and filed March 20, 2025
[CRPM]



---

[5] All pending motions are dismissed as moot.

[6] The Honorable Jeff Rose, Senior Chief Justice (Retired) of the Third Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.